# Richardson *versus* Gosser.

Where a vendor who conveys to his vendee by deed of general warranty, promises to indemnify him for any improvements he may make upon the premises in the event of the title proving worthless, such promise is not *nudum pactum*, but will support an action of *assumpsit.*

The deed did not alter the situation of the parties in this respect, being entirely distinct from the contract sued on.

The contract was not void for vagueness, nor uncertainty, because no stipulated amount of improvements was mentioned or referred to in the promise of indemnity.

The promise to pay for the improvements did not merge in the deed, because both the consideration and subject of the contract relates to a different thing from the deed.

This court will not consider an exception to the allowance of amendment of a declaration, where neither the original nor amended declaration are set forth on the paper-book.

ERROR to the Common Pleas of *Indiana county.*

This was an action of *assumpsit*, brought by Isaac Gosser, against William H. Richardson, to recover for certain improvements made on premises conveyed by Richardson to Gosser. In addition to the facts stated in the opinion of his Honour, Mr. Justice BLACK, it appeared that Gosser had brought an action of covenant on the general warranty in the deed, and recovered in that the amount of the purchase-money paid.

The jury found for the plaintiffs.

*Cook*, for plaintiff in error.

The opinion of the court was delivered by

BLACK, J.—A. was in possession of land for which he had no title. He leased it to B., then made an agreement to sell it, and finally conveyed it to him with general warranty, B. being in possession all the time under A.'s lease, agreement, and deed. Afterwards C., who was the real owner, brought ejectment, and recovered the land. This suit is brought by B. against A. for the expense of improvements put on the land by the plaintiff both before and after the date of the conveyance. It was proved on the trial that A. promised to pay B. for the improvements in case the title failed. This promise was often repeated before the im-

[Richardson *v.* Gosser.]

provements were made, at the time they were in progress, and after they were finished, and as well previous to the deed as subsequently. The plaintiff knew the title to be doubtful, and it is apparent that he would not have expended his labour and money as he did, except on the faith of the defendant's promise to keep him harmless.

It is hard to see how we could deny the plaintiff's right to recover, and at the same time satisfy the demands of common justice. The transaction between these parties was a plain contract on a subject-matter which no law forbade them to bargain about in any way they pleased. We can scarcely conceive of another case in which more palpable wrong would be wrought, or a worse example set, by suffering an agreement to be broken with impunity.

The defendant's promise was not *nudum pactum.* The consideration was sufficient. It is true, that as things turned out, neither of the parties received any benefit from the improvements; but that was not the plaintiff's fault. To make a promise binding in law, it is not necessary that the promissor should derive any advantage from it. It is enough that the promisee has encountered trouble, assumed a burden, or suffered a loss. If I employ a man to make improvements on the land of a third person, and agree to pay him the cost, I must keep my word. How far I might be allowed to revoke it before the work is done may be doubtful, but it is very sure that I cannot stand by until the contract is performed by the other party, and repudiate my part of it then. Here was a person making a purchase of land. He had so little faith in the title that he would neither pay the purchase-money nor make improvements which were necessary to its profitable use without some guaranty against the ultimate loss of his whole outlay. But he had confidence in his vendor, and was willing to accept his personal warranty in place of a good title. The vendor gave him that by his covenant in the deed, and by his parol promise that he should not lose a dollar. When the title failed, the vendee had a right to fall back on the retreat which both had agreed to provide for him. It does not seem to us that it makes any difference whether the contract concerning the improvements was made before or after the date of the deed. The deed did not alter the situation of the parties, or make any change in the title, for the grantor had no title to convey. At all events, it was a totally distinct thing from the bargain on which this suit is founded. If a stranger, who had nothing to do with the suit, had induced the vendee to make the improvements by assuring him that the title was good, and promising to indemnify him if it was not, the promise would have been binding on the principle already stated, namely, that every man must perform his promise when the promisee has relied upon it to his hurt.

It is not correct to say that there is no mutuality in this con-

[Richardson *v.* Gosser.]

tract. There is as much mutuality as in any other. It is plain *do ut facias* on the one side, and *facias ut des* on the other. The advantages of it were indeed very unequal. It made the plaintiff safe in any event, while the defendant might lose, but could not possibly gain by it. It may have been a bad bargain, but it is too late to repent of it now, since the other party has spent money on the faith of it. It must be remembered that if the defendant had not agreed to save the plaintiff from losing his improvements by paying for them, the defendant would have saved himself by not making them.

Another argument is, that the defendant's promise did not bind him, because at the time it was made the character, extent, or value of the improvements was not mentioned. It cannot be doubted that he knew what buildings were needed, and what were intended. He admitted his liability, and repeated his promise, while they were in progress and after they were up. But suppose he agreed to pay for them without knowing what they would be : a general promise to pay for all improvements that may be made at a specified place is as binding as a promise to pay for a house of given dimensions. If his *carte blanche* was filled with more than he expected, he cannot deny it for that reason. A general letter of credit is not invalid merely because the writer did not anticipate the extent to which it would be used.

It is urged that this contract about improvements was merged in the deed. All previous contracts are impliedly rescinded by a new one on the same subject-matter. Therefore the conditions or terms of a sale and the quantity of estate granted are to be looked for in the final deed of conveyance, and not in any articles of agreement which may have preceded it. But to us it appears that the contract on which this suit is founded has no such relation to the deed referred to. It does not concern the sale or the transfer of the title. It is a promise to do another thing. The consideration is wholly distinct, and the subject of the contract is a different thing. If the jury had been charged that the deed had nothing to do with the case, it would not have been easy to show that it was erroneous. But the court adopted the view of defendant's counsel so far as to concede that the contract about the improvements was merged in the deed, unless the parties agreed to " keep it alive and on foot." That it was so agreed the plaintiff proved to the satisfaction of the jury. The defendant, therefore, now undertakes the doubly difficult task of showing not only that this contract was liable to be merged in a deed which said nothing about it, but also that the parties could not prevent such merger by an agreement of their own to that effect. It is enough to say that the effort has been unsuccessful. The reason of the thing, as well as the authorities, are against the defendant on this as on the other points of his case.

VOL. II.—22

[Richardson *v.* Gosser.]

The defendant demanded that the profits of the land during the time the plaintiff had it, should be deducted from the price of the improvements. ˙ This was done in part; but the rents of the last three years were not allowed, for the reasons that the plaintiff had not received them, and the person who had got them ˙permitted them to be appropriated to the extinction of the claim which the true owner of the land had upon them as mesne profits. If the holder of the title who had recovered in ejectment was entitled to the last year's profits, and if he demanded and took them from the plaintiff, or the person in possession under him, it is very clear that the defendant cannot have them. The law does not compel the plaintiff to account for them twice.

There was an amendment to the declaration, which is assigned for one of the errors. We are not furnished with the original declaration, nor with the amendment as filed, but merely with a general statement of the addition proposed. Whether this varied from the original or not, it is impossible to say. We presume it was all right, or else the plaintiff in error would have taken the trouble to show us where it was wrong.

Judgment affirmed.