# Anderson's Administrators *versus* Washabaugh.

*Action on Bond to indemnify against Defect of Title, sustained without Eviction.—Condition to indemnify construed.—Administrator may waive formal Mode of Proof on a Suit to which he is a Party.*

1. Where, on a sale of land, the grantor had given a bond to indemnify and make the grantee safe and secure in the title to the land conveyed: *held,* that an action on the bond may be maintained by the grantee on failure of title, though he may not have been evicted.

2. Though the grantee has conveyed by a deed of general warranty one portion of the lands bought, he may notwithstanding recover to the full extent to which the title was defective.

3. Under the condition to keep clear and indemnify a grantee, the grantor is liable to refund to him the purchase-money paid, as well as reasonable counsel fees and costs incurred in defending the title.

4. An agreement by one of the administrators of the grantor, that a written statement of receipts on account of the purchase-money, should be allowed without proof as charges in the action on the indemnity, is only a waiver of a formal mode of proof, and is a contract such as an administrator is entirely competent to make.

ERROR to the Common Pleas of *Bedford county.*

This was a *scire facias* to revive a judgment which had been entered against William Anderson in his lifetime, in favour of Daniel Washabaugh. The *scire facias* was against Lemuel Anderson and Lewis Anderson, administrators, &c., of deceased, with notice to his widow and heirs.

The material facts of the case were these:—

On the 2d of October 1792, a warrant issued to Mary Foster for about 50 acres of land, in Bedford county. A survey on this warrant was returned and accepted in 1821. On the 16th November 1828, Mary Foster made her last will, in which she devised this land to Thomas Foster, and soon afterwards died. Shortly afterwards Thomas Foster died intestate and without issue, leaving six brothers and sisters, or their descendants. Most of these conveyed their interest to James Entrekin. At some period prior to 1821, Benjamin Foster and Thomas Foster, brothers, claimed to have purchased this land from Mary Foster by parol; subsequently, Thomas Foster, by parol, and Benjamin Foster, by articles of agreement, sold the property to William Anderson.

[Anderson's Administrators *v.* Washabaugh.]

On the 1st March 1854, William Anderson conveyed the land, containing by measurement fifty-two acres and thirteen perches, to Daniel Washabaugh, by deed with general warranty, for the consideration of $2083.25.

Mr. Washabaugh paid the hand-money and executed a bond and mortgage for the residue, payable as follows: $693.33 on 10th March 1855, and $693.33 on 10th March 1856, and on the 10th March 1855, he paid $550.

On 19th January 1854, D. Washabaugh conveyed the undivided half of said tract to Dr. George W. Anderson.

Some doubts having been suggested to Mr. Washabaugh as to the title to this land, he called upon William Anderson and obtained from him a bond of indemnity in the sum of $3000, dated December 5th 1855, with the following condition:—

" The condition of this obligation is such that if I, the undersigned, keep clear and indemnified the said Daniel Washabaugh, and make him secure and safe in the title to a tract of land, in Broad Top township, Bedford county, which I conveyed to him by deed dated 1st March 1854, and recorded in the recorder's office of Bedford county, in Book A. B. page 238, &c., said tract containing 52 acres and thirteen perches, about the title to which some difficulty has arisen, then this obligation to be void, otherwise to be and remain in full force and virtue to the amount of the said purchase, with interest thereon according to the terms thereof, see said deed and mortgage, in Mortgage Book B, page 167, for the consideration." A judgment was entered on this bond to No. 41 of February Term 1856, which was afterwards revived to No. 49 of April Term 1860.

In 1858, James Entrekin instituted an action of ejectment to No. 192, August Term, against D. Washabaugh, George W. Anderson, Lemuel Evans, Lewis Anderson, and Jonathan Evans, for this tract of land, claiming title from some of the heirs of Thomas Foster, to whom the land had been devised by Mary Foster, the warrantee, as above stated.

This ejectment was tried on 20th February 1860, when a verdict was rendered in favour of the plaintiff for $\frac{97}{144}$ths of the land in dispute, upon which a judgment was entered, and a writ of possession issued and executed.

The plaintiff below then sued out this writ of *scire facias* on the judgment entered on said bond of indemnity, to ascertain the amount of damages which he had sustained by reason of the eviction from the land he had purchased.

On the trial of the cause, Mr. Shannon, attorney for plaintiff below, applied to Lemuel Evans, one of the administrators of William Anderson, and procured from him an agreement that " the receipts and payments (on account of the purchase-money) would be allowed as charges in Washabaugh *v.* Anderson for

[Anderson's Administrators v. Washabaugh.]

trial at this court, without further proof." The statement in the handwriting of the plaintiff, and the admission thus obtained, were offered in evidence and admitted, although objected to by counsel for defendants, who insisted that the receipts, if produced, would show that certain of the credits claimed were not for purchase-money. The defendant also offered to call Lemuel Evans, to explain the circumstances under which he agreed to admit the statement, which the court refused to permit.

Among the points presented by the defendant were the following:—

1. That plaintiff can only recover in this action in proportion to the quantity of land from which he has been evicted, and having lost but ninety-seven one hundred and forty-fourths of the land conveyed to him, he can recover but ninety-seven one hundred and forty-fourths of the purchase-money paid by him.

3. Plaintiff cannot recover in this action for any money expended, or costs incurred in defending the title, because the condition in the bond of indemnity does not provide for it.

4. Plaintiff cannot recover more than one-half of the amount paid or expended by him, as he has sold, previous to the commencement of this action, one-half of the land purchased from William Anderson to George W. Anderson.

5. That the admission by Lemuel Evans, on the paper presented to him this morning by Mr. Shannon, and by him offered in evidence, is only to the effect that the moneys were paid, and not that the items mentioned are properly admissible as evidence in this cause.

6. That even if the Court should be of opinion that Lemuel Evans intended to charge the estate of William Anderson, yet it is not binding on his co-administrator or their sureties, or the heirs of said William Anderson.

The court below (KIMMELL, P. J.) answered the first point by saying: "The title having failed to five-sixths of the land, to that extent Washabaugh must be indemnified;" and refused the instruction prayed for in the other points. Under the charge of the court there was a verdict and judgment in favour of plaintiff for $1641.93, whereupon the defendant sued out this writ, and assigned for error:—

1. The refusal to affirm the first point.

2. The refusal to instruct as requested in the second point.

3. The refusal to instruct the jury as requested in the fourth point.

4. The admission in evidence of the "statement" above mentioned.

5 and 6. The refusal of the court to affirm the fifth and sixth points.

7. The refusal to allow the administrator to state the circum-

stances under which he agreed to admit the "statement" in evi
dence.

——————, for plaintiff in error.

*John Cessna*, for defendant.

The opinion of the court was delivered, June 26th 1862, by
STRONG, J.—The plaintiffs in error mistake in treating this

case as if it were an action to recover damages for a breach of
some one of the five ordinary "covenants for title." The extent
of the liability of Anderson's estate is to be measured by the
conditions of his bond. They imposed upon him greater obliga-
tions than he would have assumed had he merely covenanted for
the quiet enjoyment of the land conveyed. Had he done no
more than enter into such a covenant, there could have been no
recovery against him prior to an eviction of Washabaugh, and
perhaps then only proportionate to the extent of the eviction.
But the bond was given to secure to the vendee of the land more
than its peaceable possession. It recognised the fact that a diffi-
culty had arisen about the title, and it bound the obligor to keep
Washabaugh clear and indemnified, and also to make him safe
and secure, not merely in the possession of the land, but in the
title. It was more comprehensive, therefore, than a covenant
for further assurance, or even a covenant of seisin. What mat-
ters it then that the grantee had been actually turned out of only
ninety-seven one hundred and forty-fourth parts of the land?
The title had failed to five-sixth parts thereof. The grantee had
not been made "safe and secure" in any more than one-sixth
part, and an indisputable outstanding title is shown to the re-
mainder. Washabaugh had a right to yield the possession of
all but the one-sixth, without waiting to be turned out by process
of law; but he was under no obligation to abandon the land or
yield up his one-sixth, for he was a tenant in common with the
other owners. Even in an action for the breach of a covenant of
seisin, the measure of damages is generally the consideration
paid. At least equal reason exists for applying the same rule
to the present case. The question is not from how much the
grantee had been actually evicted by an ejectment, but how far
Anderson had failed to comply with his obligation. The first
assignment of error is therefore not sustained.

And the second is unsustainable. One of the conditions of
the bond is to keep clear and indemnify Washabaugh. Indem-
nifying him against what? Clearly, the costs and expenses he
might be subjected to in consequence of his having entered under
and become the grantee of Anderson. If the condition has any
meaning, it must mean that. A purchaser is not bound to decide

at his own peril that a title which his grantor undertook to convey is invalid, and yield possession to an adverse claimant. He may defend his possession under his grantor's conveyance, and it is not for the grantor to complain of him for so doing. On the contrary, he might complain were the possession yielded without resistance. Even in a suit on a common covenant for seisin, where there is no express engagement to indemnify, the covenantee is held entitled to the costs to which he has been subjected in defending the title, including his costs as between himself and his attorney: Smith v. Compton, 3 Barn. & Ald. 407. Doubts have indeed been suggested whether counsel fees are recoverable, and in some cases they have been denied, and in others allowed. Many authorities on this subject are referred to in Rawle on Covenants for Title, page 101, et seq., 3d edition. But whatever may be the measure of liability in actions on covenants for title, there can be no reasonable doubt that a bond by a grantor to indemnify a grantee, and to make him secure in the title, obliges the obligor to pay reasonable counsel fees expended in maintaining the grantee's possession: Robinson v. Bakewell, 1 Casey 424. In this state, even in actions of covenant, the grantee has been allowed costs and counsel fees expended in defending his title: Cox's Administrators v. Henry, 8 Casey 18.

Nor is there any merit in the third assignment of error. Relying on the title which Anderson had made to him, the grantee had sold one undivided half of the land before this suit was brought, and had conveyed it by deed with general warranty. This was, however, a matter with which Anderson had nothing to do, and the court properly refused to instruct the jury that on account of it the plaintiff could recover only one-half of what without it he would be entitled to.

The remaining assignments may be considered together. The court received in evidence a written statement of receipts on account of the purchase-money, and of payments made by Washabaugh. One of the defendants had in writing agreed that the receipts and payments referred to in the statement should be allowed as charges in the case without proof. It is now contended that this admission and agreement should have no effect, because it was made by an administrator, and it is said he could not bind his intestate's estate. The objection misapplies a clear and well-defined principle. Undoubtedly an administrator cannot make an executory contract which imposes a new and original obligation upon his intestate's estate. This agreement is no such contract. It is a waiver of a formal mode of proof, which it was entirely competent for the administrator to make. Clearly, he might have received unpaid purchase-money. Then why could he not acknowledge the receipt? and why not dispense with calling witnesses to establish payment? It is hardly necessary to

[Anderson's Administrators *v.* Washabaugh.]

say that the court correctly construed the admission.· This suit was to recover what Anderson's estate was legally liable to under his bond; that was, purchase-money received, and costs and expenses incurred in defending the title. The sums mentioned in the statement were admitted to be allowed in that suit without further proof. . That Lemuel Evans, who made the admission and who was a party defendant, was incompetent to testify what it meant. is too obvious to require remark.

                                        Judgment affirmed.