Statement of Facts.

## SOL. CLOSE ET AL. v. J. P. ZELL ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 5, 1891—Decided April 6, 1891.

[To be reported.]

1. A parol stipulation by the vendor of land, to refund the purchase money in the event of a failure of title, and to reimburse the vendee for any costs and expenses incurred, will not be merged in a deed containing a covenant of special warranty but no covenant of title, afterward accepted by the vendee in consideration thereof.

2. Such parol stipulation, clearly and satisfactorily proved, is enforceable by action thereon. Its enforcement does not involve a proceeding to reform the deed in any respect, the agreement for indemnity being independent and collateral thereto: Drinker v. Byers, 2 P. & W. 528; Richardson v. Gosser, 26 Pa. 335; Cox v. Henry, 32 Pa. 18; Walker v. France, 112 Pa. 203.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 201 January Term 1891, Sup. Ct.; court below, No. 44 November Term 1888, C. P.

On October 27, 1888, Solomon Close and George W. Kershner brought assumpsit against Josephine P. Zell and others, executors of the will of Thomas Zell, deceased.

The plaintiffs' statement of claim was in two counts. The second count, upon which the plaintiffs' case was rested at the trial, recited a conveyance from Thomas Zell and wife to the plaintiffs, dated December 14, 1883, of four lots of ground in Reading, with a covenant to warrant and defend the same against the grantors and their heirs, and all other persons claiming by, from or under them or any of them; averred that the plaintiffs paid to said Thomas Zell the sum of $1,300, the consideration named in said deed, and that at the time of the sealing and delivery thereof the said Thomas Zell promised the plaintiffs to repay to them said sum of $1,300, and interest thereon, as well as all expenses incurred and money paid out by them, in the event that they should not receive by

virtue of said deed the title to said premises in fee-simple and the possession thereof; averred, further, that at the date of said deed, the possession of said premises and the title thereto were lawfully in one Noel H. Benjamin, and that in two several actions of ejectment therefor, brought by the plaintiffs against said Benjamin, verdicts and judgments were rendered in his favor, whereby the plaintiffs were entirely deprived of said lots of ground and the consideration money paid therefor, and also divers sums by them expended in and about said ejectment suits, etc.    The defendants pleaded non-assumpsit.

At the trial on December 1, 1890, the plaintiffs called George E. Smith, and proposed to prove by him that Thomas Zell offered to sell the property to the witness, and as an inducement for him to take it, said to him, the witness, that if the title should fail he would repay him what he paid, together with his costs and expenses; that subsequently, and at or about the time of the conveyance of the property to Close and Kershner, the plaintiffs, or shortly thereafter, the witness had a conversation with Zell, in which Zell said that he had lost a good bargain, that he had sold the property to Close and Kershner for a sum of money; and that, in reply to the interrogation of the witness, Mr. Zell said that he had promised the plaintiffs, Close and Kershner, that if in the litigation that would follow the title to the plaintiffs should fail, he would reimburse the plaintiffs for the $1,300 paid, together with their costs and expenses.

Mr. Bland: The offer is objected to, first, that the contract between Thomas Zell and Close and Kershner is contained in their deed, and the deed is the only evidence of their contract; second, the evidence now proposed does not support any averment in the declaration; third, the evidence is irrelevant, immaterial, and incompetent.

By the court: The objection as to the first portion of the offer, as to the conversation that took place between Smith and Zell concerning the offer of the property to Smith, is sustained. We will overrule the objection as to the conversation held with Mr. Smith by Zell, with reference to the sale to Close and Kershner; exception.[1]

The witness thereupon testified: "After this sale was consummated, after they had bought, Mr. Zell said he had sold;

### Statement of Facts.

he twitted me and said I had missed a bargain in not buying, and I told him that I did not want to buy a lawsuit. He said there would be no trouble about that. He said, ' We offered to give you back your money and make you whole in every respect; we gave it to these people in the same way; I promised the same and I will do it.' He said, ' You see what makes it necessary is, it is better for them to fight if there is to be a fight about it; it is better for me; they stand in a better light.' Mr. Bland said that to me, too. They were trying to sell it to me. Mr. Bland urged me very much to buy this property. I would have gotten into a nice mess if I had bought it."

Being cross-examined by Mr. Bland, the witness admitted that, in a deposition taken some time before in this case, he had testified as follows: " He did say the title was good and offered to guarantee it to me, but whether he continued to guarantee it up to the time of selling it to Close and Kershner, I do not know." " Q. Do you consider your answer to-day consistent with this? A. I do. I do not know what he guaranteed to them, but I took it for granted from the manner in which you and he both acted that you had guaranteed it. . . . . Q. When was this conversation between you and Mr. Zell, how long after the transaction? A. I do not think it was five days afterwards, probably not over three; I used to be there every day. Since the sale I said to him, 'You have sold your property?' He said, 'Yes, you have missed a bargain.' . . . . Q. What else did he say besides what you have said? A. He said that they had no risk to run, that they would make it whole, that he would stand everything, return them the money. Q. Is that what he said—that they had no risk to run, and that he would make it whole? A. Yes, sir; that they had it the same as he offered it to me. He said he would do it. Q. They would have no risk to run and he would make them whole? A. Yes, sir."

George W. Bruckman being called, the plaintiffs offered to prove by the witness that he heard Mr. Zell say in the presence of Mr. Close, one of the plaintiffs, to the witness and to Close, that in selling this property he had entered into an agreement with the plaintiffs that they should lose nothing under any circumstances; and in case of failure of title he would return them their money, together with their costs and expenses.

Mr. Bland: Objected to, first, that the deed in evidence on the part of the plaintiffs contains the contract between Thomas Zell and George W. Kershner and Solomon Close, and the legal effect of that deed cannot be altered or varied by parol evidence such as is now offered; second, the offer is to contradict a deed, and is in conflict with the statute of frauds, and for that reason is incompetent; third, the offer does not support any theory set forth in the declaration; fourth, the offer is irrelevant, immaterial, and incompetent.

By the court: The offer is admitted.[2]

The witness then testified that he had heard a conversation in the Keystone hotel at Reading, between Zell and Close, in which the former said to the latter that if they, meaning Close and Kershner, should fail in holding on to this property at Thirteenth and Cotton which they had bought from him, he would refund to them the money they paid for it, that they should lose nothing; "I think that Mr. Zell drew my attention to what he was saying, at least he looked at me when he said to Mr. Close that he should lose nothing, that he would see that they were paid." The witness said he was unable to fix the exact date of the conversation, but he got the impression, from what was said in it, that the property referred to had been conveyed to Close and Kershner, and that litigation in regard to it had been begun.

At the close of the testimony, the court, ERMENTROUT, P. J., charged the jury in part as follows:

The defendants ask us to say to this jury:

1. The deed given in evidence by the plaintiffs is the contract between the parties, and there being no proof that any covenant in the deed has been broken, the plaintiffs are not entitled to recover.

Answer: That point we negative.[3]

2. There is no allegation in the declaration that anything was omitted from the deed by fraud, accident, or mistake, and the deed is therefore the contract between the parties; and it not appearing that any covenant in the deed has been broken, the plaintiffs are not entitled to recover.

Answer: That point we negative.[4]

3. There being no evidence in the case that any part of the

Charge of Court below.

contract between the parties was omitted from the deed in evidence by fraud, accident, or mistake, and it not appearing by the evidence in the case that any covenant in the deed has been broken, the plaintiffs are not entitled to recover.

Answer : This point we negative.[5]

4. No competent or sufficient evidence has been submitted by the plaintiffs in this case for the reformation of the deed which has been put in evidence by the plaintiffs, and upon which this action is founded ; and it not appearing that any covenant contained in said deed has been broken, the plaintiffs are not entitled to recover.

Answer : This point we negative.[6]

5. The two counts contained in the declaration being framed upon the covenants contained in the deed put in evidence upon the part of the plaintiffs, the rule of caveat emptor applies in this case ; and it not appearing that any covenant contained in the deed has been broken, the plaintiffs are not entitled to recover.

Answer : This point we negative.[7]

6. The plaintiffs have not submitted sufficient testimony to establish the defendants' liability, to warrant the submission of the case to the jury.

Answer: This we negative.[8]

7. There can be no recovery on the averment of fraud in the first count in the declaration, for the reason that there is no evidence that Thomas Zell was guilty of fraud in the conveyance of the lots to the plaintiffs.

Answer : This point we affirm.

8. There can be no recovery on the second count in the declaration, because it does not aver fraud in Thomas Zell, and does not aver that anything was omitted from the deed by fraud, accident, or mistake, and shows upon its face that the only binding contract between the parties is the deed itself ; and it not appearing that any of the covenants contained in the deed have been broken, the plaintiffs are not entitled to recover.

Answer : This point we negative.[9]

9. The court is requested to instruct the jury to disregard the testimony of George W. Bruckman, because it relates to a conversation occurring after the conveyance, and for the rea-

son that the promise which he alleges Zell made was wholly without consideration.

Answer: This point we negative. Whilst the testimony of George W. Bruckman, standing alone, of itself would not entitle the plaintiffs to recover, yet his testimony is to be considered by the jury as corroboratory of the testimony of Mr. Smith in this case, and the two will be taken together.[10]

10. The court is requested to instruct the jury to disregard the testimony of George Smith, because under the pleadings the testimony is irrelevant and incompetent.

Answer: This point we negative.[11]

11. Under all the evidence in the case, the verdict should be for the defendants.

Answer: This point we negative. The facts will be for the jury to pass upon when they come to render a verdict.[12]

12. Close and Kershner having paid the thirteen hundred dollars to Zell, with a full knowledge of the fact that the Noel H. Benjamin title was outstanding, they cannot recover in this case, and the verdict should be for the defendants.

Answer: This point we also negative. In the course of our charge we will explain more fully the legal status of this case.[13] . . . . .

First as to the position of the defendants on the law. The defendants take the position that when these people came together, all their contracts, bargains, and agreements merged; that is, passed into and were made part of the deed, and that outside of the deed nothing can be said to render the defendants liable to pay anything.

[The law presumes that when a deed is taken in pursuance of an agreement, the deed is in satisfaction of all previous bargains, covenants, and arrangements; and where the conveyance contains none of the usual covenants, the law supposes that the grantee, that is, the man who takes the deed, agreed to take the title at his risk, or else that he would have rejected the deed altogether; that if a purchaser knows about a defect in a title or an encumbrance when he takes his deed, and fails to expressly stipulate for a covenant, agreement, bargain, promise, or other security against it, the presumption is that he assumes the risk of any defect in the title, and that therefore nothing can be gainsaid. Now, that is the position of the

Charge of Court below.

defendants, and the law is correct with the exception of the latter part. The law says that whilst that is all true ; that whilst the deed is supposed to contain the bargain of the parties, yet it is only a presumption of law, and that presumption can be overruled or set aside by testimony; and that, when this is done, the presumption overcome and an intention to the contrary made to appear, they can show a promise, agreement, or bargain that survives the deed and upon which the plaintiffs would have the right to sue ; in other words, that whilst that is the presumption of the law, it can be rebutted by competent and proper testimony. The law says that the evidence to overcome the presumption raised by the deed must be clear, satisfactory, and manifest. It must satisfy the jury that such is the fact. It must be clear, satisfactory, and manifest.] [14]

[In order to show the case of the plaintiffs, they first proceed to show the delivery of the deed, the actions of ejectment, the failure to recover, and the fact that the verdict determined that the title, which was conveyed to the plaintiffs, Close and Kershner, was of no avail, that they were not enabled to obtain the possession of this property, and that the consideration money for that deed was fully paid by them. In order to show that the contract of the parties was not merged into this deed, but there was a contract made by and between the parties at the time of the delivery of this deed, which survived the deed and stood out independent of it, without being made a part of it, they call George Smith as a witness. What is his testimony ? Mr. Zell is dead. Close and Kershner cannot testify because he is dead. The law desires to even up matters, and where one party is dead and cannot testify as to the facts of the case, the law says that the other party to the contract cannot testify. So that the parties to the deed cannot give any testimony themselves, the one being dead and the other two incompetent.] [15] No witness is produced who was present at the time of the bargain and the delivery of the deed, but they rely upon the alleged admissions of Mr. Zell made to George Smith and Judge Bruckman. . . . . .

—After quoting from the testimony given by Smith and Bruckman, the court continued :

[Now, Mr. Bruckman's testimony standing alone, unsup-

Charge of Court below.

ported, would not be sufficient to grant a verdict; but that testimony is submitted to corroborate the testimony of George Smith, with reference to what was the contract or bargain made between the parties, and it is submitted to the jury in connection with the testimony of Mr. Smith, to enable them to ascertain the truth and credibility of Mr. Smith's testimony; and they point to this affirmation on the part of Mr. Zell as a corroboration of what Mr. Smith said, and that the bargain indicated in the testimony of Mr. Bruckman is essentially the terms of the bargain as indicated in the testimony of George Smith.] [18]

I have already said that the evidence must be clear, satisfactory, manifest. . . . . If the testimony is not clear and manifest, if the witnesses are not credited, if the testimony does not satisfy the minds of the jury, over and against the deed, that the promise was made as alleged, then your verdict will be for the defendants; but if the testimony does satisfy you over and against the deed, if it is made clear and manifest that such a promise was made as detailed here and as is contended for by the plaintiffs, then you would render a verdict in favor of the plaintiffs.

[Ordinarily, when there is a breach of guaranty, warranty, or indemnity, the measure of damages would be the value of the land, and therefore the ordinary measure of damages would be the consideration money paid, to wit, thirteen hundred dollars, with interest thereto added. But the plaintiffs contend that the circumstances and the evidence in this case show that there was, in addition to that, a promise made that there should be no risk run, that the party should be made whole, that they should lose nothing; and if the jury find that that is the contract, then they could add to that consideration money and the interest thereon, the reasonable costs and legal fees expended by the plaintiffs in their attempts to maintain the title. That would be the verdict, if the jury find the theory of the plaintiffs to be maintained. If the jury find that the theory of the defendants is correct, the verdict will be simply for the defendants. The evidence as to the costs paid is $39.10, $18.70, and the estimate of attorneys fees, $150. This would make the total, consideration money $1,300, costs paid amounting to $57.80, and the evidence as to fees was $100 and $50, making $150.] [19] All these are matters for the jury.

Arguments.

—The jury returned a verdict in favor of the plaintiffs for $1,976.12. Judgment having been entered, the defendants took this appeal, assigning inter alia for error:

1, 2. The admission of plaintiffs' offers.[1] [2]

3–13. The answers to defendants' points.[3 to 13]

14, 15. The parts of the charge embraced in [ ] [14] [15]

18, 19. The parts of the charge embraced in [ ] [18] [19]

*Mr. Josiah Funck* and *Mr. H. Willis Bland*, for the appellants:

1. The testimony of Smith and Bruckman was improperly admitted. A deed can be reformed only by proving fraud, accident or mistake at the time of its execution and delivery, and the testimony of those witnesses did not come up to the legal requirement. They were not present when the deed was executed, and knew nothing of the contract upon which it was founded. Nor was their testimony offered to corroborate any other witness who was so present. The statements which they say Zell made, are wholly at variance with the covenants contained in the deed by which he carefully relieved himself from liability in case of failure of title. Manifestly, the most clear, precise and indubitable testimony should be required before the deed could be subverted, and such testimony should relate to what occurred at the time the conveyance was consummated. This is the doctrine of all the cases: Sidney Sch. Fur. Co. v. Warsaw Sch. D., 130 Pa. 76; Walker v. France, 112 Pa. 203; Ferguson v. Rafferty, 128 Pa. 337; Fisher v. Witham, 132 Pa. 488.

2. Moreover, the plaintiffs' statement of claim does not contain the necessary averments to lay the ground for the introduction of testimony to reform the deed. It does not aver that any part of the contract was omitted from the deed by fraud, accident or mistake, nor does it even aver that the deed does not contain the entire contract. It is essential that the ground on which the reformation is asked, be distinctly set out in the pleadings: Renshaw v. Gans, 7 Pa. 117; Hunter v. McHose, 100 Pa. 41; Clark v. Partridge, 2 Pa. 15. The doctrine of these cases is applicable under the procedure act of May 25, 1887, P. L. 271; and there are two unanswerable objections to the view taken by the court below, that the plaintiffs might show a promise " that survives the deed: "

Opinion of the Court.

(1) There cannot be two contracts, one in writing and the other in parol, in reference to the same subject matter; for if the latter cannot be used to reform the former, the written contract disappears and the whole is reduced to parol, except when it relates to land, and then no parol contract is admissible: Scott v. Scott, 70 Pa. 244; Espy v. Anderson, 14 Pa. 311; and (2) if such parol contract could be made it must be declared on.

3. The purchase money cannot be recovered back upon a deed of special warranty, unless the grantor has been guilty of fraud, or the vendee can avail himself of apt covenants for that purpose: Steinhauer v. Witman, 1 S. & R. 447; Fisk v. Duncan, 83 Pa. 196; Dorsey v. Jackman, 1 S. & R. 42. Having paid the $1,300 purchase money to Zell with full knowledge that the Noel H. Benjamin title was outstanding, and without choosing to exact covenants in the deed for their protection against it, the plaintiffs will be held to have purchased at their own risk and they cannot recover in this case. This doctrine has been carried so far as to disallow a defence by a vendee against the payment of purchase money due, on account of a defect of title known to exist at the time of the purchase, although a purchaser who was ignorant of the defect might make such defence: Wilson v. Cochran, 46 Pa. 229. We think we have demonstrated that the plaintiffs made out no case, and we submit that the court should have affirmed our point asking for an instruction to find a verdict for the defendants.

*Mr. D. E. Schroeder* (with him *Mr. G. B. Stevens*), for the appellees.

Counsel cited: Christ v. Diffenbach, 1 S. & R. 464; Thomson v. White, 1 Dall. 424; Birchfield v. Castleman, Add. 181; Drinker v. Byers, 2 P. & W. 528; Cox v. Henry, 32 Pa. 18; Richardson v. Gosser, 26 Pa. 335; Anderson v. Washabaugh, 43 Pa. 115; Robinson v. Bakewell, 25 Pa. 424; Walker v. France, 112 Pa. 203.

OPINION, MR. JUSTICE GREEN:

In the second count of the plaintiffs' statement, their cause of action is substantially set out as a parol contract of indemnity against a defective title to certain real estate conveyed to

the plaintiffs by the defendants' testator, which was the operative inducement to the plaintiffs to purchase the title from their vendor. The deed contained the usual covenant of special warranty, but no covenant of title, and as there is no breach of any covenants of the deed no cause of action arises under it. This proceeding is therefore not in any sense a proceeding to change, alter, modify, or reform the deed in question in any respect. It is not alleged or claimed that any covenant or stipulation was omitted from the deed by fraud, mistake, or accident, but the deed, just as it is, is set forth in the statement in substance, together with an allegation that the grantor agreed with the plaintiffs, at the time of the sale and the delivery of the deed, that he would refund to them the whole of the consideration money paid by the grantees to the grantor, and all interest thereon, and all costs and expenses incurred, in the event that the grantees should not acquire under the deed a good title to the premises sold. The question arises whether such a contract is merged in the deed subsequently executed, or whether it survives the deed, and confers a cause of action which may be enforced upon a failure of the title.

It will be observed that the contract, which in this case was verbal, precedes and is independent of the deed. It stipulates for indemnity against the consequences of the taking of the title conveyed by the deed. If, notwithstanding the deed and the title thereby sought to be conveyed, the grantees subsequently sustained loss by reason of the fact that they acquired no title by the deed, is there any legal reason why they cannot recover from the grantor the money which he had received from them, and which he promised he would refund to them, in case the title failed? This is a question which has been several times adjudged by this court.

In Drinker v. Byers, 2 P. & W. 528, we held that a guaranty of title executed and delivered by a vendor to a vendee is not merged in a subsequent deed of conveyance which contains only a special warranty. The facts there were that Henry Drinker, having sold two tracts of land to Jacob Byers, before the deed was executed signed and delivered to Byers a statement or stipulation in these words: " It being represented to me by John Nisely and Jacob Byers, who have purchased two tracts of land of me situate on Bald Eagle creek, that a certain Derrick

Gonsalus makes some pretensions to part of the said two tracts, although I am well persuaded he has no just claims or rights to any part of the said land, yet, for the satisfaction of the said Nisely and Byers, I hereby engage that I will be answerable to them for any claim or demand of the said Gonsalus; that, if it should appear hereafter there is any justice in his claim, I will indemnify and save harmless the said Nisely and Byers on that account." Byers accepted, a few days later, an executed deed for the premises from Drinker, and gave him a mortgage for part of the purchase money; and upon a scire facias on the mortgage made defence that Gonsalus had recovered on his title a large part of the land conveyed by the deed, and sought to defeat the mortgage on the ground that the part of the land that was lost was of more value than the whole amount of the mortgage. Objection was made to the agreement for indemnity that it was merged in the deed and conferred no right of action, but the court below and this court decided otherwise, and judgment was entered for the defendant. Mr. Justice KENNEDY, in delivering the opinion, said:

"In the next place, it has been insisted on that the execution and acceptance of the deed of conveyance was a consummation of all previous agreements between the parties relating to the purchase of the lands; that this collateral promise of indemnity was thereby waived, and that the vendor was discharged from his obligation under it. It is certainly true that when articles of agreement for the sale of land are carried into execution by a conveyance from the vendor and bonds from the vendee, the contract in general is considered as closed, unless in extreme cases showing gross misapprehension or fraud; (citing several authorities.) This, however, is but a general rule to which there are exceptions: See Brown v. Moorhead, 8 S. & R. 569; and is founded merely on presumption, which may, as I apprehend, be rebutted by circumstances or parol evidence. In the case of Frederick v. Campbell, 13 S. & R. 136, parol evidence was held admissible to show that, at the time the deed was executed, the vendor declared to the vendee that he had a good title to two hundred twenty-five acres, and would warrant that quantity of land, the deed containing no such covenant or warranty. In the present case, although the promise of indemnity does not appear to have been made at

the time of executing the deed of conveyance, yet its date is only three weeks anterior, and would appear from its terms to have been made some time after the agreement for the sale of the land. . . . . It might perhaps, therefore, be reasonably inferred that the vendee, having received this promise of indemnity but a few days before the deed of conveyance, relied upon both as his security, and was induced thereby to give his bonds and mortgage for the payment of the balance of the purchase money."

In the case of Richardson v. Gosser, 26 Pa. 335, we held that where a vendor who conveys to his vendee by deed of general warranty, promises to indemnify him for any improvements he may make upon the premises, in the event of the title proving worthless, such promise is not nudum pactum, but will support an action of assumpsit. The deed did not alter the situation of the parties in this respect, being entirely distinct from the contract sued on. BLACK, J., after stating the facts of the case, said:

"This suit is brought by B (the vendee) against A (the vendor) for the expense of improvements put on the land by the plaintiff both before and after the date of the conveyance. It was proved on the trial that A promised to pay B for the improvements, in case the title failed. This promise was often repeated before the improvements were made, at the time they were in progress, and after they were finished, and as well previous to the deed as subsequently. The plaintiff knew the title to be doubtful, and it is apparent that he would not have expended his labor and money as he did, except on the faith of the defendant's promise to keep him harmless. It is hard to see how we could deny the plaintiff's right to recover, and at the same time satisfy the demands of common justice. The transaction between these parties was a plain contract on a subject-matter which no law forbade them to bargain about in any way they pleased. We can scarcely conceive of another case in which more palpable wrong would be wrought, or a worse example set, by suffering an agreement to be broken with impunity. The defendant's promise was not nudum pactum. The consideration was sufficient. It is true that, as things turned out, neither of the parties received any benefit from the improvements; but that was not the plaintiff's fault.

. . . . . Here was a person making a purchase of land. He had so little faith in the title that he would neither pay the purchase money, nor make improvements which were necessary to its profitable use, without some guaranty against the ultimate loss of his whole outlay. But he had confidence in his vendor, and was willing to accept his personal warranty in place of a good title. The vendor gave him that by his covenant in the deed and by his parol promise that he should not lose a dollar. When the title failed, the vendee had a right to fall back on the retreat which both had agreed to provide for him. . . . . The deed did not alter the situation of the parties, or make any change in the title, for the grantor had no title to convey. At all events, it was a totally distinct thing from the bargain on which this suit is founded. . . . . It is urged that this contract about improvements was merged in the deed. . . . . But to us it appears that the contract on which this suit is founded has no such relation to the deed referred to. It does not concern the sale or the transfer of the title. It is a promise to do another thing."

The foregoing cases have been extensively quoted because they fully illustrate everything necessary to be considered in disposing of the present case. In both of them the contract, as in this, was for indemnity against a defective title. In the last, there was a special, verbal agreement to compensate for the cost of improvements in case the title failed, and although there was a general warranty of title, that covenant would not carry a right of recovery for the cost of improvements. Hence, there could be no action for that particular loss founded on that covenant, and this court upheld an action of assumpsit on the verbal agreement, holding that it was not merged in the subsequent deed. In the case of Drinker v. Byers, supra, there was a special warranty only, and as there could be no recovery upon that covenant, we upheld the prior agreement for indemnity, which was the equivalent of a general warranty.

In Cox v. Henry, 32 Pa. 18, LEWIS, C. J., said, in delivering the opinion: "Two repugnant measures of damages cannot exist in the same action, between the same parties, relative to the same subject-matter: Seitzinger v. Weaver, 1 R. 385. It follows, that where there is a covenant of warranty entered into at the time of the contract for the sale of land, and a similar

Opinion of the Court.

covenant is embodied in the deed afterwards accepted, the first covenant is merged in the last, so far as regards the measure of damages: Drinker v. Byers, 2 P. & W. 528. But where, at the time of the contract of sale, a special covenant is entered into, with security, to indemnify the vendee 'against all costs, charges, and damages, on account of any and every lawsuit that may be brought against him to recover the land, by any and every claimant,' and this instrument is retained in the possession of the vendee after receiving the conveyance (in which there is no covenant relative to the same matter,) the deed is not an extinguishment, or a merger of the covenant for such indemnity." In this case there was a sufficient covenant of warranty in the deed to relieve against a failure of title, but not sufficient to justify a recovery for "all the costs, charges, and damages" caused by the suit which produced the eviction, and hence it was decided that an action might be maintained on the special agreement for indemnity on that account. That agreement was held not to be merged in the deed.

In Anderson v. Washabaugh, 43 Pa. 115, the deed for the premises was executed and delivered in March, 1854, and contained a clause of general warranty. Subsequently, in December, 1855, some doubts about the title having arisen, the grantor gave a bond of indemnity to the grantee to keep him "clear and indemnified" and "to make him secure and safe in the title" to the land. Afterwards there was an ejectment against the grantee in which about five sixths of the land was recovered from him, and then an action on the bond and a recovery, not only of the proportionate part of the value of the land, but also of counsel fees and costs incurred in defending the title, and that judgment was sustained by this court. STRONG, J., said: "The plaintiffs in error mistake in treating this case as if it were an action to recover damages for a breach of some one of the five ordinary 'covenants for title.' The extent of the liability of Anderson's estate is to be measured by the conditions of his bond. They imposed upon him greater obligations than he would have assumed had he merely covenanted for the quiet enjoyment of the land conveyed." In this case the agreement contained in the bond of indemnity was not made until nearly two years after the deed for the land was delivered, and the deed itself contained a covenant of general

warranty. Notwithstanding this, a recovery was sustained on the bond, and included all counsel fees, costs, and charges incurred in defending the title.

It thus appears from the cases now cited that, whether the agreement for indemnity was made before or at the time of the sale, or afterwards, the right to recover indemnity in an action on the special agreement is sustained, and that whether the agreement was by writing or in spoken words is a matter of indifference. Such an agreement is not merged in the deed if made before or at the time of the deed, and is not destroyed by a covenant of general warranty in the deed if made thereafter. The same doctrine was applied in the case of Robinson v. Bakewell, 25 Pa. 424, in an action upon a similar bond, given one day after the deed and although the deed contained a covenant of general warranty, and a recovery was had for all costs, charges, and expenses, including counsel fees, incurred in defending the title. We again enforced the same doctrine in the case of Walker v. France, 112 Pa. 203, where the warranty set up was entirely in parol, and preceded the execution of the written agreement for the sale of the land from which this part of the contract was omitted. We held the proof sufficiently clear to be submitted to the jury, and sustained a recovery for the breach of the verbal stipulation. GORDON, J., said: " That a written agreement may be modified, explained, reformed, or altogether set aside by parol evidence of an oral promise or undertaking material to the subject-matter of the contract, made by one of the parties at the time of the execution of the writing, and which induced the other party to put his name to it, must now be regarded as a principle of law so well settled as to preclude discussion." It is not at all necessary to invoke the support of this principle to sustain the present proceeding. There is no question here of altering the deed for the lots in question by inserting a clause left out of it by mistake, fraud, or accident. The case is only cited to show that where the parol stipulation is the inducing cause to the execution of the written instrument, the law is sufficiently flexible to give relief in this manner, if the evidence is of a perfectly clear and satisfactory character. But the case is of authority on the point that a contract in the nature of guaranty as to the quality of the land conveyed, is not merged in the conveyance and may be enforced independently of it.

In the present case Zell, the grantor in the deed, was dead at the trial, and the plaintiffs could not testify. But the proof was very clear that the sale had been made to Close and Kershner upon the express condition that Zell would refund them the money if the title failed. Judge Bruckman testified as to what was said by Zell to Close in a conversation some time after the deed was delivered, as follows: "He said in the presence of Mr. Close and myself that if they (meaning Close and Kershner) should fail in holding on to this property at Thirteenth and Cotton, which they had bought from him, that he would refund to them the money that they had paid for it; that they should lose nothing. I think that Mr. Zell drew my attention to what he was saying; at least he looked at me when he said to Mr. Close that he should lose nothing. I was sitting by, and the conversation was more particularly carried on between Mr. Close and Mr. Zell." George E. Smith, to whom Zell had offered the property for $800 but was refused, said he saw a good deal of the parties, and knew about the negotiations going on between Zell and Close and Kershner for the sale of the property both before and just after the sale. He was asked: " Q. Did you have any conversation with Mr. Zell afterwards? A. Yes, sir. Q. In which he said to you that he had entered into this agreement? A. Yes. After this sale was consummated, after they had bought, Mr. Zell said he had sold; he twitted me, and said I had missed a bargain in not buying, and I told him that I did not want to buy a lawsuit. He said there would be no trouble about that. He said 'he offered to give you back your money and make you whole in every respect; we gave it to these people in the same way; I promised the same and I will do it.' He said, 'You see, what makes it necessary is, it is better for them to fight, if there is to be a fight about it. It is better for me. They stand in a better light.' Mr. Bland said that to me, too. They were trying to sell it to me." He also said this conversation took place a few days after the sale, probably not more than three. He was also asked: " Q. What else did he say besides what you have said? A. He said they had no risk to run, that they would make it whole; that he would stand everything. Q. Is that what he said, that they had no risk to run and that he would make it whole? A. Yes, sir. That they had it the same as he offered

it to me.   He said he would do it.   Q. That they would have no risk to run, and he would make them whole?   A. Yes, sir. Q. Is that all that he said?   A. It was probably repeated two or three times for all I know, in different words; I do not know that they were the exact words, but that was the way he said it.   He said that what he had promised me he had promised them, and he would do so."

The other circumstances in the case were strongly corroborative of the foregoing testimony, and it was not contradicted. All of the testimony was carefully submitted to the jury by the learned court below, with instructions as to the character of the testimony required in such cases, that it should be clear, satisfactory, and manifest.   The testimony was believed by the jury, who found a verdict for the plaintiffs.   We do not see how they could have done otherwise.   The assignments of error are all dismissed, as we find no error in any of them.   The principles and authorities relied upon on behalf of the defendants are quite inapplicable to a case and a question of the character involved here.

Judgment affirmed.