EMPIRE DEVELOPMENT CO. et al. v. TITLE GUARANTEE & TRUST CO.

(Supreme Court, Appellate Division, First Department.   January 21, 1916.)

1. INSURANCE ⬞426½—TITLE INSURANCE—CONSTRUCTION—RISK.
   Plaintiff received a deed of land conveyed under a contract providing that the purchaser should take title subject to all assessments on the premises becoming a lien after the date of two specified assessments which the vendor agreed to pay, and paid an assessment thereafter becoming a lien on the land, and sued to recover the amount of defendant title insurance company, which, after the assessment paid had become a lien, issued its policy insuring against "all loss or damage," containing a schedule enumerating the liens, etc., excepted from the policy, but not mentioning such lien.   *Held*, that plaintiff could recover only his actual loss, and that, as he took title subject to the lien which he had paid, there was no loss or damage, and the insurer was not liable.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1131;   Dec. Dig. ⬞426½.]

2. INSURANCE ⬞119—TITLE INSURANCE—NATURE OF CONTRACT.
   A policy of title insurance is essentially and solely a contract of indemnity, and not a wagering policy, or even an expression of opinion backed by a forfeiture, so that the insured can recover only his actual loss, and cannot make the policy a subject of profit.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 165;   Dec. Dig. ⬞119.]

Appeal from Trial Term, New York County.

Action by the Empire Development Company and Edward C. Gainsborg against the Title Guarantee & Trust Company.   From a judgment in favor of plaintiffs upon a directed verdict, and from an order denying a motion for a new trial, defendant appeals.   Reversed, and complaint dismissed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

Harold Swain, of New York City, for appellant.
Joab H. Banton, of New York City, for respondents.

SCOTT, J.   The defendant is a corporation organized, among other things, to examine and insure titles to real property.   The action is brought upon a policy of title insurance, dated April 4, 1907, issued by defendant to the plaintiff Edward C. Gainsborg, and by him assigned (with consent of defendant) to the plaintiff Empire Development Company.

The essential facts are not in dispute.   In the winter of 1906-07 one Samuel Gainsborg, now deceased, the father of plaintiff Edward C. Gainsborg, entered upon negotiations to purchase from the executors of Catharine M. Andrews, deceased, a large tract of land, undeveloped, or only partially developed, which lay in the borough, now county of Bronx, in the city of New York.   The city had adopted maps laying out streets and avenues across this tract, and the work of opening these streets and otherwise improving the property was in active progress.   This involved the laying of assessments.   After some negotiations as to price between Mr. John H. Judge, one of

⬞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the executors of Mrs. Andrews' estate, and Samuel Gainsborg, a price was agreed upon and a sale arranged. A real estate broker named Davies was active in bringing the negotiations to a conclusion. At Gainsborg's instigation the contract was executed by one Claudio Capo, as purchaser; but the real party in interest was Gainsborg, who had already formulated plans for the incorporation of the Empire Develop- ment Company, in which he intended ultimately to have the title vest. When the purchase was completed and the title closed the deed was executed to plaintiff Edward C. Gainsborg, whose interest in the property appears to have been very slight; the real party in interest being his father, Samuel Gainsborg. The policy of title insurance to which this action relates was issued to Edward C. Gainsborg as the owner of the record title. Subsequently he transferred the property to the Empire Development Company and assigned the policy of title insurance to it.

[1, 2] At the time the contract of sale was executed by Mrs. An- drews' executors and Capo, certain assessments for local improvements had already become liens upon the property, and proceedings were pending which, in the natural course of events, would result in other liens of like nature. The executors were content to assume and pay the assessments which had become liens at the time of signing the con- tract, but were not willing to pay any assessments which might there- after become liens. Accordingly the contract provided that the pur- chaser should take title:

"Subject to all assessments upon said premises becoming a lien after the assessment for Tiffany street opening from Longwood avenue to Intervale avenue, which became a lien December 6, 1906, and the assessment for ac- quiring title to East 149th street, from the Southern Boulevard to the easterly bulkhead line of the Harlem River, which became a lien December 14, 1906, which assessments the vendors agree to pay and no others."

There was pending at that time a proceeding for opening Randall avenue, which ran through the property, and before the title was closed, and on or about February 20th, 1907, assessments for this improve- ment, aggregating $6,094.05, were confirmed and became a lien on the property. The title was closed on April 4, 1907, and thereafter, on April 20, 1907, the elder Gainsborg, or the Empire Development Company, paid the said assessment for the Randall avenue opening, and it is for the sum so paid with interest that the plaintiffs sue and have recovered judgment. The title insurance policy was in the usual form, and contained a schedule which enumerated the "estates, inter- ests, defects, objections to title, *liens, charges, and incumbrances* af- fecting said premises" against which the policy did not insure. In this schedule no mention is made of the Randall avenue assessment, which had become a lien before the policy was issued. Under these circumstances the defendant would ordinarily be liable to repay the amount of the assessment, but it claims that under the peculiar cir- cumstances of this case it is not so liable.

In addition to the cause of action based upon the policy itself, the complaint embraces a cause of action for damages on the ground that defendant had been employed by the elder Gainsborg, and had

agreed to act for him in making the contract for the purchase of the property, and had been negligent in permitting the "subject" clause, as it is called in the case, and which has already been quoted, to remain in the contract. This cause of action requires but scant consideration, since it is unsupported by the proof, and was evidently not considered or acted on by the court at Trial Term. The defendant's contention that it is not liable under the peculiar circumstances of this case is based upon the terms of the policy itself, and the nature of the contract evidenced by the policy. What the defendant undertook to insure against is "all loss or damage," not exceeding a specified amount, "which the insured shall sustain" by reason of any defect or defects, or "by reason of any liens or incumbrances charging the same at the date of this policy," and not excepted by the schedule hereinbefore referred to.

That the plaintiffs suffered no loss or damage in the case is argued from the fact that by the terms of the contract of sale the purchaser had assumed the Randall avenue assessment, it having become a lien subsequent to those mentioned in the "subject" clause in the contract, and hence it cannot be said to have been damaged by paying that which it had expressly agreed to pay in any event. The argument may be stated in another way, to wit: That what defendant undertook to do was to insure the title which the purchaser was to receive from the Andrews executors; that that title was to be, by the terms of the contract of sale, taken subject to the Randall avenue assessment, and all other assessments becoming a lien after those expressly specified in the contract, and consequently that defendant's policy was not intended to, and did not, cover such assessments.

We find much force in this contention. It is perhaps surprising, in view of the large business done by title insurance companies, that so few cases are to be found in the books bearing upon their obligations to and relations with those to whom they have issued policies. It is very well settled in this state, however, that a policy of title insurance is essentially and solely a contract of indemnity, and not a wagering policy, or even an expression of opinon backed by a forfeit. Trenton Potteries Co. v. Title Guarantee & Trust Co., 176 N. Y. 65, 68 N. E. 132; Palliser v. Title Insurance Co., 61 Misc. Rep. 490, 115 N. Y. Supp. 545. Hence a plaintiff, declaring upon such a policy, may recover only his actual loss, and cannot make the policy a subject of profit to the insured. This is a rule generally applicable to all contracts for indemnity.

Under the somewhat unusual and peculiar facts of the present case, we are unable to see that the plaintiffs have sustained any loss or damage. By the terms of the contract of sale they, or their predecessors in interest, would have been obliged to take title, no matter how many assessments were found to be liens upon the property, of later date than those expressly referred to in the contract and which the vendors agreed to pay. Hence the failure of defendant to discover the existence of the Randall avenue assessment (if it did fail to discover it), or to include it among the liens and incumbrances not insured

against, imposed no burden upon the vendee that he had not already agreed to assume.

We have preferred to place our disposition of this appeal on the wholly undisputed questions of fact in the case, because we consider that they point inevitably to a reversal of the judgment. We may say, however, that the evidence is very persuasive to the effect that the existence of the lien of the Randall avenue assessment was well known to the elder Gainsborg when the title was closed, and that the omission to refer to it in the policy was due to his suggestion. Apart from this, however, and upon the undisputed facts, we are of opinion that defendant's motion for the direction of a verdict in its favor should have been granted.

The judgment and order appealed from are therefore reversed, and judgment directed for defendant dismissing the complaint upon the merits, with costs and disbursements to defendant in this court and the court below. All concur.