with considerations of public policy and convenience. None of these factors appear in the case at bar.

Later cases, such as Matter of Rothchild v. Gould, 84 App. Div. 196, 82 N. Y. Supp. 558, Sutherland v. St. Lawrence County, 101 App. Div. 299, 91 N. Y. Supp. 962, either expressly decide or strongly intimate that the presumption that the money belongs to defendant is merely prima facie, and may, of course, be rebutted by appropriate and adequate evidence to the contrary. To the same effect is Finelite v. Sonberg, 75 App. Div. 455, 78 N. Y. Supp. 338, which, however, involved only an arrest in a civil action.

I do not think, therefore, that the mere fact that the statute provides that the lien may be discharged "by the contractor depositing money" raised anything but a rebuttable presumption that the money so deposited belongs to the contractor. Of course, we cannot anticipate what further proofs bearing upon that presumption may be adduced at the trial.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event, unless plaintiff elects within 10 days after entry of this order and notice thereof in this city to discontinue, in which event such leave is granted, upon payment of appropriate costs in the court below, less costs of this appeal. All concur.

---

BROADWAY REALTY CO. v. LAWYERS' TITLE INS. & TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. March 17, 1916.)

1. INSURANCE ⊙═167—TITLE INSURANCE—PROPERTY COVERED.
    Where a title insurance company issued a policy covering lands specifically described and also a building being erected on the premises, naming it, the insurer having no knowledge that the building was not wholly upon the land, the insurance covered the title of only so much of the building as stood upon the land described.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 324; Dec. Dig. ⊙═167.]

2. INSURANCE ⊙═151(1)—TITLE INSURANCE—CONTRACT—INCORPORATION OF SURVEY BY REFERENCE.
    Where a title insurance policy provided that the title intended to be insured was that of the land on which a building stood, as shown by an annexed survey, such provision made the survey a part of the contract.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 308–311; Dec. Dig. ⊙═151(1).]

3. INSURANCE ⊙═426½—TITLE INSURANCE—LIABILITY OF INSURER.
    Where a policy of title insurance excepted any "defects, objections, liens, or incumbrances created by the act or with the privity of the assured," and referred to the building as "now being erected," it dated back to the time of the purchase of the property, when the building was not completed, so that the insurer was not liable for loss occasioned assured by its being forced to cut off a foot of the building, built so much over the line of the land into a street, begun by its vendor and substantially completed by itself when the policy was issued.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1131; Dec. Dig. ⊙═426½.]

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by the Broadway Realty Company against the Lawyers' Title Insurance & Trust Company and another. From a judgment for plaintiff, and an order denying its motion to set aside the verdict and for new trial (see 91 Misc. Rep. 137, 154 N. Y. Supp. 1024), the named defendant appeals. Judgment and order refusing to set aside the verdict reversed, and complaint dismissed.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

P. S. Dean, of New York City, for appellant.
Arthur H. Masten, of New York City, for respondent.

SMITH, J. This action was brought to recover upon a policy of title insurance issued by the defendant. On July 25, 1896, plaintiff purchased of one Richmond certain premises fronting on Bowling Green between Broadway and Greenwich street, giving a mortgage to a trust company to secure bonds issued. By this mortgage plaintiff was required to insure the title, and on December 16, 1896, procured the policy in suit. This policy seems to have been the usual title insurance policy, wherein the defendant agreed upon consideration to keep harmless and indemnify the plaintiff and his assignees—

"against all loss or damage, not exceeding $1,800,000, which said assured shall sustain by reason of defects of unmarketability of the title of the assured to the estate, mortgage, or interest described in schedule A hereto annexed, or because of liens or incumbrances charging the same at the date of this policy excepting judgments against the assured and estates, defects, objections, liens, or incumbrances created by the act or with the privity of the assured. * * *"

In schedule A annexed to the policy is a description of the property, the title of which was intended to be insured. That description is specific, and does not cover any land within the limits of Broadway. At the end of that description is inserted the phrase:

"And also the building now being erected on said premises, known as the Bowling Green offices."

In the next paragraph of the policy it is stated:

"The land the title to which is hereby intended to be insured being that on which said building now stands, as shown on the survey of Francis W. Ford dated February 27, 1897, a duplicate of which survey is hereto attached."

The facts upon which the defendant's liability is here claimed are that at the time of the issuance of the policy the building upon the premises described was so erected that the approach thereto extended about one foot beyond the line of the land described into Broadway. The plaintiff was compelled to take off so much of the approach as was situated upon Broadway at a cost of about $16,000, and has recovered therefor against the defendant as for a defect existing at the time that the policy was issued and against which the defendant has insured.

There are three objections to this judgment:

[1] (1) The insurance is of title to lands specifically described, which confessedly do not include any land in Broadway, and the insurance

of the title to the building erected thereon must be construed as the insurance of the title of so much of the building as stands upon the land thus specifically described. This would seem to be a matter of first impression, as there is no evidence of any knowledge on behalf of the defendant that the building was not wholly upon the land described; and as the title to the building which is insured must of necessity rest upon the title to the land upon which it stands, it is fair to presume that the insurance of the title to the building was upon the assumption and to the extent only that that building rested wholly upon land specifically described. Further, this interpretation would seem to be supported by the case of Griffiths v. Morrison, 106 N. Y. 165, 12 N. E. 580.

[2] (2) The provision that the land, the title to which is hereby intended to be insured, being that on which said building now stands as shown by the survey annexed, makes the survey a part of the contract, and upon that survey the building appears to be wholly within the metes and bounds of the land described, and in no way to encroach upon Broadway.

[3] (3) In the policy specific exception is made of any "defects, objections, liens, or incumbrances created by the act or with the privity of the assured."

It appears that this building was erected by the assured, and so much of the approach of the building as extended into Broadway was put there by the assured, or at least by persons in privity with the assured. Mr. Peabody, the secretary and treasurer of the assured, testified that it was his custom to visit the building twice a week during its entire construction, that it was being constructed in 1896, and that the construction was substantially completed upon December 15, 1896, the date of the issuance of the policy. The exception in the policy is not limited to defects caused by the insured after the issuance of the policy, but would seem to cover all defects caused by the assured either before or after its issuance.

The validity or effect of title insurance issued after the purchase of property is not free from doubt. Empire Development Co. v. Title Guaranty & Trust Co., decided in this court and reported in 157 N. Y. Supp. 68; Trenton Potteries Co. v. Title Guarantee & Trust Co., 176 N. Y. 65, 68 N. E. 132. In the view which I have taken of the proper interpretation of this contract, the determination of this question becomes unnecessary. Upon the purchase of the property it was agreed that $1,800,000 should be paid by bonds secured by a mortgage thereupon. The purchaser was required to obtain title insurance. Under the reasoning in the Trenton Potteries Co. Case, supra, this insurance policy might well be dated back to the time of the purchase of the property. At that time, this building was not erected, and it was only substantially erected upon December 15th, when the policy was in fact issued. The policy refers to the building as "now being erected." While it appears that these encroachments upon Broadway existed upon December 15th, when the policy was in fact issued, it does not appear that they existed when the property was purchased, and in fact the inference is to the contrary, and if this

policy is dated back to the time when the property was purchased, it clearly would not cover this encroachment thereafter built.

It would seem to follow that the judgment and order refusing to set aside the verdict should be reversed, with costs, and the complaint dismissed, with costs.   Settle order on notice.   All concur.