Foehrenbach, Appellant, v. German-American Title & Trust Company.

*Insurance—Title insurance—Definition.*

Title insurance is an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specified amount against loss through defects of title to real estate wherein the latter has an interest, either as purchaser or otherwise.

Where a person in possession of land, and claiming an absolute fee simple in it, applies to a title insurance company in good faith for insurance of the title, and the company issues to him a policy insuring him against defects, unmarketability, liens and incumbrances as of the date of the policy, and thereafter it is decided in partition proceedings in the orphans' court that the insured has only a half interest in the land, and as a result of such proceedings the insured voluntarily surrenders the premises to the purchaser at a judicial sale therein, the insured may recover the value of the half interest from the company, and the latter will not be heard to allege that as the insured never had title to the half interest, he consequently suffered no loss.

FELL and BROWN, JJ., dissent.

Argued Jan. 24, 1907. Appeal No. 130, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1903, No. 2,045, for defendant on case stated in suit of Julius E. Foehrenbach v. German-American Title & Trust Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit on a policy of title insurance.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant on case stated.

*E. Spencer Miller*, with him *Maurice G. Belknap*, for appellant.—The insurance company knew when it issued the policy now in suit, that it was insuring a supposed title taken some time previously. The application and records, including the will, showed this. Nevertheless, it took the plaintiff's money and gave him the insurance obligation which it now says was valueless.

Appellant was not bound to stand out against claim of title made by the purchaser from the court's representative who conducted the sale.

When it is borne in mind that Mr. Foehrenbach applied for insurance under an absolute belief that he was the exclusive owner of the property it will be appreciated why he did not call to the attention of the company the former existence of William Ellerich, the survival of the latter's children and their relation to John Baker. But, as a matter of fact, the record

of Louisa Foehrenbach's will showed that such a person as Ellerich had been in existence at its date.

*Alex. Simpson, Jr.*, with him *Francis Shunk Brown*, for appellee.—The policy in suit being a contract of indemnity only, plaintiff cannot recover because it is admitted that he incurred no expense and lost nothing in reliance thereupon: Wheeler v. Trust Co., 206 Pa. 428; Kearns v. Howley, 188 Pa. 116; Ewing v. Ry. Co., 147 Pa. 40; Linn v. Duquesne Borough, 204 Pa. 551; Huston v. Freemansburg Borough, 212 Pa. 548.

Appellant cannot recover, because he voluntarily surrendered the insured premises: Hoeveler v. Fleming, 91 Pa. 322; Knotts v. McGregor, 47 W. Va. 566 (35 S. E. Repr. 899); Seigel v. Neary, 77 N. Y. Supp. 854; Berks County v. Pile, 18 Pa. 493; Loux v. Fox, 171 Pa. 68; Seymour v. Trust, etc., Co., 203 Pa. 151.

No recovery can be had because appellant did not disclose all the material facts when he applied for the insurance: Chicora Fertilizer Co. v. Dunan, 91 Md. 144 (46 Atl. Repr. 347); Hazlett v. Powell, 30 Pa. 293; Zahn v. McMillin, 179 Pa. 146; Bolz v. Stuhl, 4 Pa. Superior Ct. 52; Brewing Co. v McLean, 15 Pa. Superior Ct. 38; Wayne v. Commercial Nat. Bank, 52 Pa. 343.

OPINION BY MR. JUSTICE POTTER, April 1, 1907:

On September 13, 1894, the plaintiff in this case, under the supposition that he was the owner of the entire interest in a certain property, applied to the defendant for title insurance in the usual form, in the sum of $5,000, against liens or defects in title affecting the premises. On October 12, 1894, the Title Insurance Company issued to applicant its policy which set forth in part as follows: " This policy of insurance witnesseth that The German-American Title and Trust Company, in consideration of the payment of expenses and twelve dollars and fifty cents ($12.50) by way of premium or deposit to it paid by Julius E. Foehrenbach doth hereby covenant that it will indemnify, keep harmless and insure the said Julius E. Foehrenbach and all persons claiming the estate and property hereinafter mentioned under him by descent, by will or under the

intestate laws, and all other persons to whom this policy may be transferred with the assent of this company, testified by the signatures of the proper officers of this company indorsed on this policy, against all loss or damage not exceeding five thousand dollars, which the said insured shall sustain by reason of defects of the title of the insured to the estate, mortgage or interest described in schedule A, hereto annexed, or because of liens or incumbrances charging the same at the date of this policy. Saving the defects, objections, liens or incumbrances excepted in schedule B, or by the conditions contained in schedule C, and hereby incorporated into this contract."

Schedule A showed that the interest of the insured covered by the policy was as owner in fee. And that the title of the insured was claimed to be vested in him through the will of his mother, Louisa Foehrenbach, dated December 21, 1888, and registered in the appropriate office in Philadelphia in Will book 144, page 463. Louisa Foehrenbach provided in her will as follows : " I give, devise and bequeath unto my said son John Baker for and during his natural life (after said Julius shall have attained the age of twenty-one years) the property No. 543 East Girard avenue, corner Montgomery avenue, 18th ward, and after his death to his lawful issue if any, their heirs and assigns ; in default of issue the same to vest in my said son Julius Foehrenbach his heirs and assigns forever."

John Baker, named in the will, died June 23, 1894, intestate, unmarried and without issue, leaving to survive him a half-brother, Julius E. Foehrenbach, and three children of William Ellerich, another half-brother. That William Ellerich bore the same relation to John Baker that he himself did, and that William Ellerich left three surviving children, was known to Julius E. Foehrenbach when he made his application for title insurance, but he did not mention these facts to the Title Insurance Company. Presumably, this was because he was acting under the belief that he was, under the will of his mother, the exclusive owner of the property, as there is no suggestion of fraud or bad faith upon the part of plaintiff. Indeed, there could not be, for the will of Louisa Foehrenbach was given by appellant as his immediate source of title, and it was examined and accepted as such by defendant com-

pany, as set forth in schedule A, and this will contained a bequest to her son William Ellerich, and made obvious his relationship to the said John Baker. Subsequently, the three children of William Ellerich, claiming a one-half interest in the premises in question, began partition proceedings in the orphans' court. It was there held that John Baker took a fee under the terms of his mother's will, and therefore at his death his half-brother, Julius E. Foehrenbach, instead of taking the entire interest from his mother, took only a half interest from his half-brother, and the remaining half interest became vested in the children of William Ellerich, the deceased half-brother. The property was then sold under the partition proceedings, realizing the sum of $4,100, its value, and on distribution of the proceeds of sale one-half the net balance was awarded to the Ellerichs, and one-half to a lien creditor of Foehrenbach. The policy of title insurance had been assigned by Foehrenbach to this lien creditor, and the company paid her the difference between the amount awarded her by the orphans' court and her entire lien, being the sum of $411.87. On November 21, 1904, Foehrenbach, who had been in possession of the premises since the death of Baker, a period of some ten years, voluntarily delivered possession of them to the purchaser at the partition sale. He then brought this suit in assumpsit against the title company to recover $1,915.70, being the difference between the value of the property, less the amount of the award by the orphans' court, a few small items of credit, and the money paid his assigns.

Defendant filed an affidavit of defense and pleas. A case stated was agreed upon and the cause submitted to the court below, which entered judgment in the following language: " This policy is not a guarantee of title, but a contract of indemnity. The plaintiff has lost nothing. Judgment for defendant on case stated."

In reaching this conclusion the learned court adopted the suggestion of the defendant, that the plaintiff lost nothing, because he never did, in fact, have the title to the entire interest, as he supposed he had, and therefore he could not be said to lose that which he had never owned. As a logical statement, taken in the abstract, this is unassailable. But in determining whether or not the failure of his title to the one-

half interest in the property constituted such a loss as would entitle him to indemnity under the terms of his insurance policy, we must examine the contract in the light of the purpose or object for which it was made.

It is admitted that if plaintiff had purchased or improved the property in reliance upon the policy, he could recover. But as he was in possession as owner, before he applied for and received the insurance, it is urged that he lost nothing, because he expended nothing in reliance upon the policy. We cannot see any sound reason for this attempted distinction between the rights of a present and prospective owner, who applies for title insurance. Relief of mind to an owner, obtained through title insurance, is quite as desirable as the same assurance furnished to a prospective purchaser or mortgagee.<sup>×</sup> The sole object of title insurance is to cover possibilities of loss through defects that may cloud or invalidate titles. It is for the assumption of whatever risk there may be, in such connection, that the premium is paid to, and accepted by, the company which issues the policy. Title insurance is not mere guesswork, nor is it a wager. It is based upon careful examination of the muniments of title, and the exercise of judgment by skilled conveyancers. <sup>×</sup>

The quality of a title is a matter of opinion, as to which even men learned in the law of real estate may differ. A policy of title insurance means the opinion of the company which issues it, as to the validity of the title, backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured.

Loss is a relative term. Failure to keep that which one has, is loss. The plaintiff in this case, upon September 12, 1894, found himself in possession of a property, devised to him, as he supposed and claimed, in the will of his mother. Wishing to safeguard himself in the enjoyment of his title, he applied to the defendant company for insurance. " Title insurance is an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specified amount against loss through defects of title to real estate wherein the latter has an interest, either as purchaser or otherwise : " Frost on Guaranty Insurance, sec. 162. A contract of title insurance is also defined as " a contract to indemnify against loss through

defects in the title to real estate or liens or incumbrances thereon : " 1 Cooley on Insurance, 12.

It must be borne in mind that the real subject of insurance is not the concrete thing, but the interest which the one to be indemnified has in the concrete thing. The interest which plaintiff desired to protect was the entire interest as owner in fee of the property in question. It was this interest which he submitted to defendant company as the subject-matter of insurance. It was for the company then to examine the evidence of his title, and to say whether or not it would assume the risk of making good to him, the injury which would result, in case his claim of title to the entire interest should prove defective. The contract which he asked for, and which by its policy the company made with him, was one of insurance against defects in the title, as he claimed it to be, and as the company agreed with him after examination that it was, viz.: title to the entire interest in the property. The policy applied to the situation as it then existed. It insured the plaintiff against defects, unmarketability, liens and incumbrances as of that date. It said to him, you are in our judgment the owner in fee of the entire interest in this property, and we will back our opinion by agreeing to hold you harmless, up to the amount of the policy, in case for any reason our judgment in this respect should prove to be mistaken.

The risks of title insurance end where the risks of other kinds of insurance begin. Title insurance is designed to protect the insured, and save him harmless from any loss arising through defects, liens or incumbrances that may be in existence, affecting the title when the policy is issued. It does not protect against any claim arising after the issuance of the policy. In the present case the validity of the plaintiff's claim to the entire interest in the property depended upon the construction of the language of the will of Louisa Foehrenbach.

Evidently the defendant company, having the will before it, construed the devise as a life estate in the first taker, and a fee in the remainderman : otherwise, it would not have issued its policy insuring a fee in the remainderman. In adopting this construction, it was mistaken, for when some ten years afterwards the question was raised in the orphans' court,

under the partition proceedings, it was decided that the first
taker took a fee simple. The title of the plaintiff to the prop-
erty in question was not, therefore, derived from his mother,
as claimed by him in his application for insurance, but what-
ever interest he had came to him through his half-brother,
John Baker, from whom he took only an undivided one-half
interest. Can there be any doubt that the reduction of his
interest in the property from an ownership of the whole, to
that of one-half, was a defect, coming directly within the
terms of the policy ? No matter whether or not the question
of the amount of his interest was doubtful when the policy
was issued. The risk of insuring him in his claim of title was
one which the defendant could legitimately take, if it chose
to do so. Insurance carries with it the idea of protection
against some risk. If there were no risk, there would be no
cause for insurance. The underlying principle of insurance
is the contribution of small sums by a large number of insured,
to a common fund, from which to indemnify those who ac-
tually suffer the loss, which might have fallen upon any of
them. Actual loss of course must precede the right of com-
pensation. But that is measured by the standard accepted as
between the parties. In this case the standard of interest,
which was claimed by appellant, was ownership in fee of the
entire property. That standard was, after examination of the
muniments of title, by the defendant company, admitted as
correct, and the policy of insurance was issued, for a proper
consideration, agreeing to insure the plaintiff against any loss
or damage by reason of defects in that particular interest or
claim of title which he had presented to the company. That
is, against any outstanding claim which would reduce his in-
terest below that which he claimed it to be. It requires no
argument to show that the absolute failure of title to one-half
the interest was a serious defect, as compared in extent and
quality with the title to the entire interest, which he had as-
serted and submitted to the defendant company, as the basis
upon which the insurance was to be effected, and which was
accepted and approved by it, as set forth in the policy.

The estate or interest of the insured which was covered by
the policy was that of owner in fee of the entire property.
Any defect in title which reduced his interest below that

point was, it seems to us, just that much loss, or damage, for which he was entitled to be indemnified. The fact that an application is made for title insurance by one who, at the time, claims to be the owner, is sufficient of itself to put the insurance company on its guard, and ought to be regarded by it as notice that unusual care should be taken in the examination of the title.

There is no merit in the suggestion that plaintiff is not entitled to recover because he voluntarily gave possession to the purchaser at the sale under the partition proceedings. The sale was made under the decree of the orphans' court, in a suit of which due notice had been given to the defendant company, within the period specified in the policy. It was, therefore, bound by the result. Plaintiff was not bound to carry his resistance to the decree to the point of waiting to be physically expelled from the premises. Proper respect for the court which had made the decree forbade such conduct.

The assignments of error are all sustained.

The judgment of the court below is reversed; and as we are of opinion that the plaintiff was entitled to recover the full amount of the claim, judgment is here entered for plaintiff in the sum of $1,915.70, with interest from November 21, 1904.

FELL and BROWN, JJ., dissent.