# Pennsylvania Laundry Co. *v.* Land Title and Trust Co., Appellant.

*Title insurance—Terms of policy—Measure of damages.*

Where a title insurance company covenanted, for a valuable consideration, to indemnify the insured against defects in title or encumbrances which might impair its value, the deprivation of the right to use a part of the property for the purpose which the plaintiff contemplated, was a loss for which the plaintiff is entitled to be indemnified.

The measure of damages is the loss which the plaintiff sustained by reason of the defect in his title, and this is not only the value of the strip of ground taken, but also additional expenditures rendered necessary by such defect.

An insurance company issued a policy which undertook to insure the plaintiff's title to a certain piece of ground, excepting such defects as "accuracy of description and dimensions and any other objections which an official survey would disclose." The plaintiff desiring to erect a building upon the property, employed an architect to prepare plans and superintend the erection of the building. Application was made to the surveyor of the proper district of the City of Philadelphia for an official survey of the lot, and a plan of survey was furnished by the district surveyor to the architect. The latter prepared plans for the building, in accordance with the plan of survey furnished by the district surveyor, and the work of excavating for the foundation was being carried on when a bill in equity was filed by the owners of the property adjoining the western line of the lot, averring that they had acquired by adverse user, for a long period of years, the right to use, as an alley or passageway,

a strip of ground two feet six inches wide, along the western portion of the property in question. Upon the filing of the bill in equity, the plaintiff company gave notice to the defendant company of the proceeding and requested it to make a defense to the same. The title company declined to assume the burden of defending the case upon the ground that the claim of the alley, if established, would be one which fell within the exception to the covenant of the policy, and that the defect was one which an official survey would disclose. The equity suit established the right to the alley.

In an action on the policy, the case was for the jury with instructions that, if the alley was such an encumbrance that any plan furnished by a competent surveyor would show it, the plaintiff was not entitled to recover. The court could not declare, as a matter of law, that the existence of the alleged alley would have appeared upon a plan furnished by the district surveyor, and whether it came within the exception set forth in the policy, was a question for the jury.

*Res judicata—Identity of cause of action—Identity of matter in issue.*

In applying the principle of res judicata, the inquiry is not always as to the identity of the cause of action, but as to the identity of the matter in issue, and the matter in issue is not what comes collaterally or incidentally in controversy under the evidence, but what is essentially and directly in issue in the cause.

Argued December 8, 1919. Appeal, No. 271, Oct. T., 1919, by defendant, from judgment of C. P. No. 3, Phila. County, Dec. T., 1915, No. 342, on verdict for plaintiff in the case of Pennsylvania Laundry Company v. Land Title and Trust Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit on policy of title insurance. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $891.37 and judgment thereon. Defendant appealed.

329, (1920).]   Assignment of Errors—Arguments.

*Errors assigned* were various rulings on evidence, the charge of the court, and refusal to give binding instructions for the defendant on the ground that the main question in the case was res judicata.

*Elton J. Buckley,* and with him *Frederick J. Geiger,* for appellant.—If the judgment in the first case was based upon a finding of fact fatal to the second case, the issue is res judicata: 23 Cyc. 1271; Boston & Maine R. R. Co. v. Brackett, 71 N. H. 496; Gregg v. Belting Co., 69 N. H. 247.

Consequential damages cannot be collected for violation of a contract of title insurance against encumbrances: 38 Cyc. 353; 11 Cyc. 1166-7; German American Title, etc., Co. v. Citizens Trust Co., 190 Pa. 247; Wheeler v. Real Estate Title Ins. Co., 160 Pa. 408; Anderson's Admrs. v. Washabaugh, 43 Pa. 115; Robinson v. Bakewell, 25 Pa. 424.

*Thomas F. Gain,* and with him *Murray H. Spahr* and *Brown & Williams,* for appellee.—The principle of res judicata did not apply: Cavanaugh v. Buehler, 120 Pa. 441; Forcey and Mitchell's App., 106 Pa. 508; Allen v. International Text Book Co., 201 Pa. 579.

A liberal construction must be given contracts of title insurance and if there was any doubt it must be resolved in favor of the assured: National Bank v. Insurance Company, 95 U. S. 673; Thompson v. Phenix Insurance Co., 136 U. S. 287; Kahnweiler v. Phœnix Ins. Co., of Brooklyn, 67 Fed. 483; Minnesota Title Ins. & Trust Co. v. Drevel, 70 Fed. 198; Phila. Tool Co. v. British Am. Ass. Co., 132 Pa. 236; Barnes v. New Jersey Title Co., 142 Fed. 957; Wheeler v. Trust Company, 160 Pa. 408; Montgomery v. Mutual Company, 242 Fed. 86.

The defect in the title was covered by the policy: Fœhrenbach v. German-American Title & Trust Co., 217 Pa. 331; Gauler v. Solicitor's Loan & Trust Co., 9 Pa.

Co. Ct. 634; Glyn v. Title Guarantee & Trust Co., 132 N. Y. Div. 859.

OPINION BY PORTER, J., July 14, 1920:

The plaintiff being the owner of a certain lot of ground situated on Wallace street east of 33d street, and extending through to Mt. Vernon street, in the City of Philadelphia, applied to the defendant for a policy of title insurance, paid the consideration demanded and the company, on March 15, 1914, issued the policy. The defendant covenanted by the policy to insure the plaintiff, "That the title of the assured to the estate, described in Schedule A hereto annexed, is good and marketable and clear of all liens and encumbrances charging the same at the date of his policy; saving such estates, defects, objections, liens and encumbrances as may be set forth in Schedule B, or excepted by the conditions of this policy hereto annexed and hereby incorporated in this contract." "Schedule A" described the lot of ground, stating that the same had been conveyed to the assured by Paul D. Brun and wife, by deed dated December 17, 1913. "Schedule B" set forth the defects and encumbrances which were excepted out of the covenants of the policy and against which the defendant did not undertake to indemnify the assured; the parts of said schedule here material are as follows: "Accuracy of description and dimensions and any other objections which an official survey would disclose. Taxes and water rents of the year 1914. Lot insured partly fenced and fence on the east off the line and encroaches on lot insured." The plaintiff desiring to erect a building upon the property employed William Lowenthal, a civil engineer or architect, to prepare plans and superintend the erection of the building. Application was made to the surveyor of the proper district of the City of Philadelphia for an official survey of the lot and a plan of survey was furnished to Lowenthal by the district surveyor on March 15, 1915. Lowenthal prepared plans for

the building in accordance with the plan of survey furnished by Mr. Johnson, the district surveyor, preparations for the erection of the building were made and the work of excavating for the foundation was being carried on, when a bill was filed by owners of property adjoining the western line of the lot, averring that they had acquired by adverse user during a long period of time the right to use as an alley or passageway a strip of ground two feet six inches wide along the westerly portion of the lot extending from Wallace street almost half way to Mt. Vernon street. Upon the filing of the bill in equity the plaintiff company gave notice to the defendant company of the proceeding and requested the title company to make the defense to the same. The title company declined to assume the burden of defending the case upon the ground that the claim of an alley, if established, would be one that fell within the exception to the covenants of the policy, alleging that the defect was one which an official survey would disclose. The equity proceeding resulted in a decree perpetually enjoining the defendants from building upon or interfering with the ground covered by the alleged alleyway. The plaintiff subsequently brought against the defendant this action upon the policy and recovered a judgment in the court below, from which we have this appeal by the defendant.

The appellant contends that the alley in question was an encumbrance "which an official survey would disclose," and so within the exception contained in the covenants of the policy. In writing the policy the defendant did not see fit to limit its liability to encumbrances disclosed by the records of the recorder's office of the county, nor the records of any or all other public offices where records affecting title to land may under the law be kept. It very clearly appears by the covenants of the policy that the physical conditions existing upon the ground were within the contemplation of the parties, for it is plainly stipulated that one of the

encumbrances for which the defendant would not be liable was any that might arise out of the fact that the fence to the east was off the line and encroached on the lot insured. The covenant to indemnify was general and the plaintiff was entitled to recover unless the passageway over the strip of ground along the westerly side of the lot was such an alley or passageway as would be disclosed by an official survey. Would an official survey have disclosed the existence of the alley? Is that a question of law, or one of fact, under the evidence produced in the court below? It seems manifest that the term "official survey" as used in this policy did not refer to a plan of survey obtained from the records of the land office of the Commonwealth or the department of the secretary of the internal affairs of the Commonwealth, for plans by private owners laying out lots in the City of Philadelphia have no place in that department. It was upon all hands assumed in the court below that the term referred to surveys made by the district surveyors of the City of Philadelphia and return to the bureau of surveys of that city. The legislation bearing upon the duties and powers of district surveyors of the City of Philadelphia which is here material to be considered is found in the Acts of April 21, 1855, sec. 3, P. L. 264; May 13, 1856, secs. 13 and 14, P. L. 570, and April 13, 1868, sec. 1, P. L. 1061.

The learned counsel representing the appellant in their supplemental brief make the following admission: "There is no warrant of law for the contention that a survey prepared by an official surveyor stands on any higher status than any other survey or that its official character clothes it with anything final or that its lack of accuracy is any less open to question and disproof than a survey prepared by any other surveyor. The legislation creating the office of district surveyor and providing his duties, goes no farther than the creation of certain officials who should have certain well defined duties. It is always possible to question the manner in

which those duties are carried out. When a title insurance policy states, therefore, that general objections excepted from the policy are those which an 'official' survey would disclose, the meaning simply is such a survey as should be made by the official designated for that purpose." There is nothing in the legislation referred to which defines the duties of district surveyors with regard to the regulation of lots for private individuals, except as to fixing the grades of streets and the line of curbing. The court cannot declare as matter of law that the existence of an alleged alley should have appeared upon a plan furnished by a district surveyor. Whether it should have appeared in any case is dependent upon the facts as found by the jury, under proper instructions by the court. If the policy in this case had excepted from its operation any easements for right of way manifestly apparent upon an examination of the property, then the question whether the alley in the present case was one which came within the exception would have been a question for the jury. This policy did, as we have already said, deal with the physical conditions existing upon the ground, when it stated the fact that the fence along the easterly line intruded upon the lot insured. The alley in question was not, it is true, separated from the rest of the lot by a fence, but if it was so open and notorious, paved in such a manner that any surveyor must have necessarily recognized it as an encumbrance upon the land, then why did not this insurer notice it, just as it noticed the fence upon the other side of the lot? Had the alley been one laid out upon a plan of lots which had been approved by the board of surveys and was of record in the bureau of surveys, it might then be said that there was in the bureau an official record of the existence of the alley and that it should have appeared upon any plans furnished by a district surveyor, but there was nothing of that kind in this case. The parties introduced evidence as to the practice of the district surveyors of the city with regard to what they

indicated upon their plans furnished to owners of property. One witness on behalf of the defendant testified that what the plan would show would depend on the purpose for which it was to be used. "If it was for conveyance purposes there is one way of making it. If it is for an architect, there is another way; and if it be made for the general location of things there is another kind of a plan. The applicant goes to the surveyor's office and states what he wants and the plan is made in accordance with that." This witness testified that the existence of the alley in question would have been shown upon a plan "if made for conveyance purposes," but that if made for other purposes it might not appear. Witnesses called on behalf of the plaintiff testified that no official survey furnished by the district surveyor would have indicated the existence of this alley. The appellant contends that the term "official survey" as used in this policy should be construed to mean an "official survey for conveyance." It is important to bear in mind that the requirements of what an official survey, in the sense in which the term is used in this policy, shall show, are not fixed by law. The defendant in its policy used a term the meaning of which necessarily involved the introduction of evidence. The evidence with regard to this matter was oral and contradictory. This policy was prepared by the defendant company, if there were different kinds of official surveys and the company desired to limit its liability by referring to some particular kind, then it ought to have so stated distinctly in its contract. The learned judge of the court below very properly submitted the question to the jury with the instruction that if the alley was such an encumbrance that any plan furnished by a competent surveyor would show it, then the plaintiff was not entitled to recover. This instruction was as favorable as any that the defendant could reasonably ask.

The learned counsel for defendant contends that the decree of the court in the equity proceeding instituted by

the owners of lots adjoining the property on the western side conclusively established the fact that the alley was an encumbrance upon plaintiff's lot which would have appeared upon an official survey, that the matter is res adjudicata. The rights of the parties in that proceeding did not depend upon an official survey; the plaintiffs in the bill in equity were asserting a right founded upon long continued adverse user, not upon any official action of the board of surveys. "In applying the principle of res adjudicata, the inquiry is not always, perhaps, as to the identity of the cause of action, but as to the identity of the matter in issue and the matter in issue is not what comes collaterally or incidentally in controversy under the evidence but what is essentially and directly in issue in the cause...... Neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within the jurisdiction; nor of any matter incidentally cognizable; nor of any matter to be inferred by argument from the judgment"; Cavanaugh v. Buehler, 120 Pa. 457. The appellant has printed in its paper-book the adjudication and decree in the equity case, but has not printed the pleadings. It clearly appears, however, that the plaintiffs in that case were not founding their right upon any official survey. The court properly refused binding instructions in favor of the defendant.

The plaintiff was the owner of this property at the time the policy issued, the defendant covenanted for a valuable consideration to indemnify it against defects in title or encumbrances which might impair its value and the deprivation of the right to use a part of the property for the purposes which the plaintiff contemplated was a loss for which the plaintiff is entitled to be indemnified: Foehrenbach v. German-American Title & Trust Co., 217 Pa. 331. The appellant contends, however, that even if the plaintiff is entitled to recover it can only recover the value of the strip of ground taken and the cost of defending the equity proceeding: Anderson's Admrs.

v. Washabaugh, 43 Pa. 115; Robinson v. Bakewell, 25 Pa. 424. The rule undoubtedly is that the plaintiff in such a case is entitled to be reimbursed for the loss sustained: German-American Title & Trust Co. v. Citizens' Trust & Surety Co., 190 Pa. 247. When a property consists of farming land one acre of which is as valuable as another, then if a corner of the farm be lost, the measure of damages is the value of the part lost. When, however, we come to consider the case of city lots which are to be used for building purposes, it is very clear that the mere value of the strip of ground taken is not the proper measure of damages. A strip of ground three feet wide taken out of the middle of a twenty-foot building lot would diminish the value of the parts thus separated. The alley in question in the present case not only diminished the width of the front on Wallace street, but rendered it necessary to make an offset in the west wall of the building, thus adding to the cost of construction. Anything which renders it necessary to spend more money in using a lot impairs the value of the land. All the specifications are overruled.

The judgment is affirmed.