# Wytheville.

KATHERINE MARANDINO v. THE LAWYERS TITLE INSURANCE CORPORATION, SUCCESSOR TO REAL ESTATE TITLE GUARANTY CORPORATION.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Gregory and Browning, JJ.

The opinion states the case.

*J. Henry Beazley,* for the plaintiff in error.

*David Meade White* and *Haskins Hobson,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

Katherine Marandino seeks to recover of the Lawyers Title Insurance Corporation under a policy which undertook to guarantee the title to certain real estate.

The issues were submitted to the trial judge, who entered judgment in favor of the defendant company, from which judgment this writ of error was allowed.

The conceded facts are that, in consideration of the premium paid, Katherine Marandino received a policy which states: "That for value received and only for the purposes set forth in the title certificate hereto attached and hereby made a part hereof, being identified herewith by the name of the attorneys signing same subscribed to each page thereof, the said guarantor doth hereby covenant and agree to indemnify and save harmless said guaranteed against all loss or damage, not exceeding the sum of two thousand two hundred twenty-five and 00/100 ($2,225.00) dollars, which said guaranteed may sustain by reason of objections to the title to the real estate described in said title certificate existing at this date, except such objections as are set forth in said certificate and except as stipulated by the conditions of this policy shown below, such loss or damage to be ascertained and payable in accordance with said conditions."

The description of the real estate, the title of which was so guaranteed, reads:

*"Description of Real Estate.*—All that certain lot or parcel of land, lying and being in the city of Richmond, Virginia, at the northeast corner of Twenty-second and Broad streets, together with the improvements thereon and all appurtances thereto belonging, known and designated as No. 2200 east Broad street, and bounded as follows, to-wit: Beginning at the

northeast corner of Twenty-second and Broad streets, as established by ordinance of city council of the city of Richmond, approved October 14, 1911, thence running northwardly along and fronting on the eastern line of Twenty-second street thirty-eight feet and five inches, more or less, to the point of intersection thereof with a line along the southern face of the southern wall of house No. 305 North Twenty-second street, and extending back eastwardly from said front and between the north line of Broad street, as established by the said ordinance, and the line of the southern face of the aforesaid southern wall sixty-six feet; and plat of which is recorded in Plat Book 4, page 163, in the clerk's office of Richmond Chancery Court."

The title certificate, signed by an attorney, stated that the property so described had been found "free from material recorded objections, except as designated below under the designation objections."

After her purchase it was discovered that under the ordinance of October 14, 1911, referred to in the description, the line of Broad street had been so fixed as to take off from the Twenty-second street front five feet three inches, so that instead of the lot actually fronting on the eastern line of Twenty-second street thirty-eight feet, five inches, as stated in the description, it only fronted on that street thirty-three feet, two inches.

It was shown that after the delivery of the policy it was discovered that the retaining wall of the house thereon rested upon that part of the lot, five feet three inches on corner of Broad and Twenty-second streets, which had been cut off from the lot by the ordinance. Subsequently, the defendant company secured a quit-claim deed from the former owners of the lot. Thereafter suit was brought in the Chancery Court of the city of Richmond by the company in the name of Mrs. Marandino against the city of Richmond, seeking to establish the fact that the city had no title to the five feet, three inches; but that

court decided otherwise, and held that the title thereto was in the city and not in Mrs. Marandino.

There being no substantial conflict in the testimony as to the facts, the determination of the case depends upon the construction of the policy.

In approaching this question, it appears to be everywhere held that such policies are subject to the rules generally applicable to contracts of insurance, among which are, that being drawn by the company doubtful questions should generally be decided in favor of the assured, and that exceptions and reservations are strictly construed. The language is construed in accordance with the common understanding of the words used. Ann. Cas. 1914D, 638; 38 Cyc. 346.

So approaching this contract, there seems to be no obscurity in its terms. It is said for the company that had the assured gone to the ordinance she would have discovered that the lot did not front thirty-eight feet, five inches, upon Twenty-second street. By the same token, had the company's title examiner gone to the ordinance, he should have discovered the same thing. This, then, is a defect in the description which the record disclosed, and it is against defects shown by the record which the company undertook to insure the plaintiff.

It is argued for the company, and seems to have been held by the trial court in this case, that inasmuch as this ordinance disclosed the defect, and the company disclosed the ordinance, therefore the plaintiff has received the property she bought. We think this is too strict a construction. She was justified in concluding that, notwithstanding the fact that the ordinance established the line of Broad street, it was, nevertheless, true that the lot which she was buying still fronted thirty-eight feet, five inches on Twenty-second street, for so the property is described in her policy. She had the right to rely upon that description. The defect is one which the company should have discovered, and if discovered, good faith and honesty re-

quired that the defect should have been plainly disclosed to the plaintiff.

There have not been many cases which have involved such a question, but all to which our attention has been called tend to sustain the views which we have stated.

In *Pennsylvania Laundry Co.* v. *Land Title & Trust Co.*, 74 Pa. Super. Ct. 329, it appeared that the property was described as clear of all liens and incumbrances at the date of the policy, "saving such estates, defects, objections, liens and encumbrances as may be set forth in Schedule B, or excepted by the conditions of this policy hereto annexed and hereby incorporated in this contract." The exceptions in Schedule B are thus stated: "Accuracy of description and dimensions and any other objections which an official survey would disclose. Taxes and water rents of the year 1914. Lot insured partly fenced and fence on the east off the line and encroaches on lot insured." Plaintiff got ready to build and was excavating for the foundation. The owners of the lot on the western line averred that they had the right to use as an alley or passageway a strip of ground two feet six inches wide along the westerly portion of the lot extending from Wallace street almost half way to Mt. Vernon street. The plaintiff gave notice to the defendant of the institution of suit and requested it to make defense, but the title company declined to assume the burden of defending the case upon the ground that the claim of an alley, if established, would be one which fell within the exception to the covenants of the policy, alleging that the defect was one which an official survey would disclose. The assured was there perpetually enjoined from building upon or interfering with the ground covered by the alleged alleyway, and then brought suit against the company and recovered. The court held that under the facts shown, an official survey would not have disclosed the existence of the alleyway. The court concluded that the defendant company covenanted for a valuable consideration to indemnify the plaintiff against defects in

the title or encumbrances which might impair its value, and the deprivation of the right to use a part of the property for the purposes which the plaintiff contemplated was a loss for which the plaintiff was entitled to be indemnified—citing *Foehrenbach* v. *German-American Title & Trust Co.*, 217 Pa. 331, 66 Atl. 561, 12 L. R. A. (N. S.) 465, 118 Am. St. Rep. 916.

In *Place* v. *St. Paul Title Ins. & Tr. Co.*, 67 Minn. 126, 69 N. W. 706, 708, 64 Am. St. Rep. 404, the trial court sustained a demurrer to the declaration, the facts alleged being the issuance to the plaintiff, Place, and another, of a policy to indemnify them as mortgagees of a certain tract of land. It was alleged that in 1894 the plaintiffs foreclosed their mortgage and bid off the property for the amount due upon the mortgage, including taxes paid by the plaintiffs and the expenses of sale; that neither of the mortgagors had, at the date of the mortgage, any right, title, or interest in a certain strip on one side of the tract; that the plaintiffs had no notice of the defect until the year 1895; that the plaintiffs, in 1896, gave the defendant written notice of the defect in the title and of their claims for damages; that the plaintiffs had, on their part, complied with the requirements of the policy, and that the value of the strip of land so lost to them was $1,200.00. The appellate court overruled the demurrer, reversed the judgment and remanded the case for trial on the merits. The policy there seems to have the usual conditions, and the court concluded thus: "None of the conditions found in the quoted language apply to a case where not only does another party hold possession of the land adversely to the insured, but the latter has lost it absolutely by reason of a defect in the insured title."

In *Glyn* v. *Title Guarantee & Trust Co.*, 132 App. Div. 859, 117 N. Y. S. 424, 427, the facts seem to be that the policy insured the purchaser of real estate against any defect of title affecting the premises, or the interest of the purchaser therein, or by reason of the unmarketability of the title or by reason

of liens or incumbrances at the date of the policy, but exempting "variations between the location of the fences, stoops and the record lines," and it was held that the condition of that policy was broken by the encroachments on the premises arising by reason of the fact that the stoop, the door cap, and pilaster newel post of the adjoining property encroached several inches on the premises. The trial court there sustained the demurrer and the case was reversed by the appellate court and sent back for a new trial, the court in this connection saying: "The encroachments described in the complaint, with the right of continued support so long as they might stand, undoubtedly constituted an incumbrance upon the property referred to in the policy, for they were matters which might interfere with or prevent the free use and improvement of the property by the owner, and which the owner could not at will remove, and they are not in our opinion exempted from the operation of the policy by the words contained in the exemption clause, 'variations between the location of the fences and stoops and the record lines,' for this clause makes no reference to the door cap and pilaster, which also overlap and encroach."

An Illinois case, *Chicago Real Estate Board* v. *Mullenbach*, 184 Ill. App. 437, 438, seems quite applicable to this case. There a title guarantee policy tendered to the purchaser was made subject to questions of survey, and this was held wholly immaterial where the premises as described in the contract have an actual existence in fact within the boundary lines as designated in the original survey and plat. There is only an abstract of the decision, but, as we understand it, that case bears close resemblance to this case. Here it may be fairly said that the question of an actual survey in order to determine just the legal effect of the ordinance changing the line of Broad street, seems to be wholly immaterial in view of the fact that the area described in the contract as fronting thirty-eight feet, five inches, upon Twenty-second street have an actual existence in fact,

and the lot so described is the land to which the insurance policy refers.

*Broadway Realty Co.* v. *Lawyers Title Insurance and Tr. Co.,* 226 N. Y. 335, 123 N. E. 754, reversed *Broadway Realty Co.* v. *Lawyers' Title Insurance and Tr. Co.,* 171 App. Div. 792, 157 N. Y. S. 1088. The facts there were that the property, the title to which was insured, was described by metes and bounds, and after that description there were these words: "And also the building now being erected on said premises known as the Bowling Green offices. The lands, the title to which is hereby intended to be insured, being that on which said building now stands, as shown by the survey of Francis W. Ford, dated February 27, 1897, a duplicate of which survey is hereto annexed." The survey there referred to showed the building as being entirely within the lot lines, and showed no part of the premises as encroaching upon Broadway, but as a matter of fact at the time the building did encroach beyond the line of the land described by metes and bounds and into Broadway. The court held the company liable under its policy, and said this in that connection: "The contract was drawn by defendant. In construing its terms, if any are doubtful or uncertain, defendant must bear the burden. (*Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 196, 105 N. E. 217.) Is its meaning so doubtful that plaintiff has the advantage of a reasonably beneficial interpretation of its language? Ought defendant in reason to have understood that plaintiff would give the policy the meaning which it now seeks to sustain? It does not appear from what source the survey came, and we must not assume that plaintiff should not believe that it was accurate, not only as to the lands but as to the location of the building. It covers the land upon which a known and designated building stands and it places such building wholly inside the street line. The policy says, even though in somewhat equivocal language, that an accurate survey of the plaintiff's building is attached to and made a part of the policy and shows no part of

the building in the street. We cannot say that plaintiff did not and might not so read it. If it may thus be read, it must thus be read. It is no preposterous supposition that plaintiff's primary desire was to protect itself by insurance against such encroachments, and that the company made or adopted the survey to that end. We cannot take notice that he who runs could read the line of Broadway on the ground, and that a surveyor could make no mistake about it. Nor can we assume that the words 'said building' should be read as if the parties intended them to mean 'part of said building.' "

All that is said in these cases applies with equal force to the facts in this case. The plaintiff had the right to rely upon the description of the property, and specifically as to its frontage on Twenty-second street, notwithstanding the ordinance. The risk of a proper description was assumed by the company, and it should bear the responsibility for the mistake.

Another point urged for the company is that after the decision that the part of the lot described was in Broad street and owned by the city of Richmond, the statement of facts shows that the plaintiff "refused to go any further with that case, and she had already brought suit against the present defendant." It is claimed that the plaintiff cannot recover because of this provision in the policy: "The guarantor shall have the right to and will at its own cost defend and settle any action or other proceeding founded upon a claim of title or defect guaranteed against by this policy. * * * And if any person having an interest in this policy shall institute or connive at or consent to the institution of any such action, suit, or proceeding, or shall refuse to permit his name to be used in the defense thereof, or in the prosecution of any appeal or writ of error or other proceeding, the guarantor may properly elect to take therein, or in any other proceedings stipulated by these conditions and so elected, then in either case this policy shall likewise be void as to such claim or defect."

The language of the certificate of facts, that the plain-

tiff refused to go further with that case, is not sufficient to sustain the claim that she refused to permit her name "to be used in defense thereof, or in the prosecution of any appeal, writ of error or other proceeding the guarantor may properly elect to take therein." In order to take advantage of such a provision, the company should show clearly, not simply that the plaintiff "refused to go any further," but that the plaintiff prevented the company from prosecuting an appeal, writ of error, or other proceeding, or that the assured refused to permit the use of her name by the company, or that it might not have prosecuted an appeal or writ of error had it wished to do so. Indeed, it seems also to be apparent that had there been any further proceeding by way of appeal or writ of error, it would have been unavailing.

Our conclusion, then, is to reverse the judgment, and to remand the case for further proceedings.

*Reversed and remanded.*