133 So.2d 483 (1961)
Edgar LIVINGSTON, Appellant,
v.
AMERICAN TITLE AND INSURANCE COMPANY, a corporation, Appellee.
No. C-238.
District Court of Appeal of Florida. First District.
September 12, 1961.
Rehearing Denied October 24, 1961.
Robinson & Randle, Jacksonville, for appellant.
Smith, Axtell & Howell, Jacksonville, for appellee.
TAYLOR, Associate Judge.
Plaintiff below, appellant here, sued defendant, appellee, for alleged breach of a contract relating to the insurance by the defendant of the title to a parcel of land. Whether the contract was one of insurance or to insure will be presently considered.
The original complaint was, on defendant's motion, dismissed at a hearing which, although duly noticed, the plaintiff's attorney failed to attend. The order of dismissal, however, allowed plaintiff ten days within which to move for leave to amend and tender a good complaint. Plaintiff filed his motion for leave to amend and attached *484 a proposed complaint. After a hearing, the trial court held the proposed amended complaint to be insufficient, denied leave to file it, and entered judgment in favor of defendant.
The question on this appeal is the sufficiency of the proposed amended complaint to state a cause of action.
Briefly, and for the purpose of this appeal, the facts disclosed by the amended complaint are as follows:
Plaintiff bargained to purchase from one Cecil Lightsey a parcel of land and prior to February 9, 1955, made a partial payment of $1,700.00.[1] On that date the defendant issued to the plaintiff over its corporate seal an instrument entitled "Interim Title Insurance Binder", the main body of which, with schedules omitted, is set forth in the footnote.[2]
After the issuance of this "binder" and before the consummation of the purchase the plaintiff's attorney discovered that the immediate grantor of Cecil Lightsey had been adjudged incompetent prior to the execution of the deed to Lightsey. He immediately communicated this information to defendant and defendant advised plaintiff through his attorney that it would not issue a title insurance policy under the terms of *485 the binder and denied any liability to plaintiff.
The trial court held that the complaint stated a cause of action in all respects except that it failed to allege facts showing recoverable damages, but that there was no basis for a recovery by the plaintiff against defendant because the complaint did not allege that the plaintiff had incurred any expense or made any investment in the land between the issuance of the binder and the discovery of the defect of title.[3]
We hold that the complaint states a cause of action for breach of contract and contains sufficient allegations of facts to show recoverable damages.
The contract made on February 9, 1955, is a binding agreement. Whether it is a contract of insurance[4] or a contract to insure[5] is not essential to the defendant's liability. We cannot adopt defendant's theory that this document is merely an offer to issue a policy of insurance upon the meeting of certain conditions by the plaintiff, which offer was withdrawn upon the discovery of the defect in title and before it had been accepted by the plaintiff or the plaintiff had expended money in reliance upon it.
If not actually a policy of temporary insurance the binder is at least a firm and irrevocable undertaking on the part of the defendant to insure the title of Cecil Lightsey (the seller) or his grantee (presumably plaintiff) to the land described in Schedule "A" subject only to the "exceptions and requirements" of Schedule "B" and "C". Schedule "B" is by its express terms an enumeration of "Requirements to be Complied with before policy of title insurance will be issued without exception thereto." (Emphasis supplied.) Schedule "C" is a statement that the policy will not insure against taxes for 1955 and subsequent years.
Under neither Schedule "B" or "C" was there any exception which could even remotely be construed as a reservation of a right to refuse to issue the policy based upon defective execution of any deed of record or the mental capacity of any party in the chain of title. The matters enumerated are of such a nature as to indicate conclusively that the title to the property had been examined by the defendant.
The conclusion is inescapable that the defendant had caused the title to the property to be examined, had determined what defects it would require to be corrected (or *486 excluded from coverage) and in the light of its investigation determined in due course of business to accept the risk of insuring the title, and committed itself accordingly.
Under the strict letter of the contract the plaintiff was not obligated to disclose to the defendant a defect of title discovered after the issuance of the binder but in so doing the plaintiff's attorney took the only right, proper and ethical course.
When the defendant was thus confronted with the fact that the title of Lightsey was defective in a respect previously unknown to it or to the plaintiff it had only two courses open to it: It could stand upon its commitment to insure the title hoping that the deed from the incompetent to Lightsey would never be attacked or, if attacked, could be sustained by a showing that at the time of the execution of the deed the grantor was in fact competent;[6] or it could pay to the plaintiff the amount of his loss resulting from the defect in the title against which plaintiff had undertaken to protect him. It is wholly immaterial whether the investment made by plaintiff was before or after the issuance of the binder. The question is: Did plaintiff suffer loss by reason of a defect in title against which the defendant had contracted to insure him?[7]
Insurance is protection against hazards. While most insurance is protection against future occurrences such as fire, storm or accident, title insurance as customarily written is protection against future loss because of past events unknown to or misjudged by the insurer and the insured but which may come to light and deprive the insured of the enjoyment of property. To limit the benefits of title insurance to investments in the property made after the issuance of the insurance would preclude landowners purchasing this assurance of the enjoyment of their property and deprive insurers such as the defendant of profitable business.
A contract to insure is just as binding as a contract of insurance. The only difference in the liability of the insurer is that in case of breach of a contract to insure the damages may sometime be minimized. The case at bar illustrates the point: the actual loss sustained by the plaintiff was the investment made before the discovery of the defect in title and the defendant's prompt anticipatory breach of the contract.[8] Had the sale been fully consummated the loss would probably have been the full amount of the insurance. Certainly the defendant should not be heard to say that the industry of plaintiff's attorney brought to light a defect in the title to the land which defendant had overlooked; that the integrity of plaintiff's attorney caused him to inform defendant of the defect before the purchase had been completed and the defendant become obligated for the full amount of the insurance;[9] but that this industry and integrity combine to penalize the plaintiff by permitting the defendant to disavow any liability on its binder, renege on its solemn agreement to insure the title against this very defect[10] and throw the entire loss on the plaintiff.
The opinion of the trial judge suggests the possibility that plaintiff may have *487 been reimbursed for his loss by a return to him of the binder paid by him to Lightsey. If this be the case, it would constitute payment of plaintiff's loss and would be a proper subject of an affirmative defense. Failure to negative every possible affirmative defense does not render a complaint insufficient.
The judgment is reversed with direction to grant plaintiff's motion for leave to file his proposed amended complaint, thereafter the case shall proceed in due course.
Reversed
WIGGINTON, Acting Chief Judge, and STURGIS, J., concur.

On Petition for Rehearing
PER CURIAM.
By petition for rehearing, appellee expresses fear that the foregoing opinion may preclude it from asserting affirmative defenses to the complaint which this Court holds is legally sufficient to state a cause of action.
In that opinion, we began our discussion with the statement that: "The question on this appeal is the sufficiency of the proposed amended complaint to state a cause of action."
We found that the proposed amended complaint did, in fact, state a cause of action.
We concluded our discussion with the statement that: "Failure to negative every possible affirmative defense does not render a complaint insufficient."
Our judgment was that: "The judgment (of the trial court) is reversed with direction to grant plaintiff's motion for leave to file his proposed amended complaint, thereafter the case shall proceed in due course." (Emphasis supplied.)
It is difficult to perceive how this language could be misunderstood or misconstrued.
We first clearly stated the single question before us  the sufficiency of the complaint. It is elementary that upon such consideration all allegations of the complaint are taken as true and possible affirmative defenses are not considered. But we were careful to point out that the opinion did not preclude the interposition of affirmative defenses, and directed that this complaint be filed and "thereafter the case shall proceed in due course." Proceeding in due course from the filing of a complaint necessarily implies the right to deny any allegation of such complaint or plead any affirmative defense thereto.
The petition for rehearing being entirely frivolous is stricken ex mero motu.
WIGGINTON, Acting Chief Judge, STURGIS, J., and TAYLOR, Associate Judge, concur.
NOTES
[1] The time of making his payment, or part of it, may have been later, but failure of the plaintiff to so allege leaves a reasonable inference, adopted by the trial court, that the entire payment was made prior to February 9, 1955.
[2] "American Title and Insurance Company

_________
"Interim Title Insurance Binder Title No. 27783
"To: Edgar Livingston
"Pursuant to your application for title insurance on lands described in Schedule `A' hereof, you are hereby assured that, as of the 9th day of February, 1955, at 5:00 o'clock P.M., (Which date shall be construed as the date of this Binder) American Title and Insurance Company will insure the title of
......................... Cecil Lightsey ........................
or his grantee or mortgagee to said lands and premises, subject only to exceptions and requirements as are shown in Schedules `B' and `C' hereof.
"You are further assured hereby that upon receipt of final certificate on form furnished by this Company signed by the approved examining attorney, showing compliance with and satisfaction of the requirements set forth under Schedule `B' of this Binder, as well as liens, encumbrances and objections, if any, created after the effective date of this Binder, and upon payment of its premium for title insurance, this Company will issue to you, as the insured, a policy of title insurance on its customary form applicable to the transaction contemplated, in the sum of $6500.00, showing under Schedule `B' thereof only the exceptions appearing in Schedule `C' of this Binder.
"This Binder is delivered and accepted upon the understanding that you have no personal knowledge or intimation of any defect, objection, lien or encumbrance affecting said premises other than those shown under Schedules `B' and `C' hereof, and your failure to disclose any such personal information shall render this Binder and any policy issued based thereon null and void as to such defect, objection, lien or encumbrance.
"Nothing contained in this Binder shall be construed as a guarantee against the consequences of the exercise and enforcement or attempted enforcement of governmental `police power' over the property described herein.
"The liability of this Company under this Binder shall become null and void upon the issuance of a policy of title insurance as contemplated herein, and in any event at the expiration of six months from date, unless extended by this Company in writing.
"This Binder shall not become effective unless and until it is countersigned by a Vice President, Assistant Secretary, Title Office or Validating Officer.
"In Witness Whereof, the said American Title and Insurance Company has caused these presents to be signed and its Corporate Seal affixed as of the day, time and date above designated.
 "American Title and Insurance
 Company
 By /s/ Joseph Weintraub
 President
 "Countersigned:
 By /s/ George B. Marshall, Jr.
 Asst. Secty.
 "Attest:
 /s/ Ronald G. Eaton
 Secretary."

[3] The opinion of the trial judge states:

"* * * The plaintiff alleges that he had invested $1700.00 in the land, and had obligated himself to pay `all other expenses incident thereto', `at the time defendant breached its title insurance binder contract'. There is no allegation that he disbursed any money or incurred any obligation after the defendant issued the contract to insure, in reliance on that contract, nor any allegation that he failed to obtain reimbursement from the seller of the $1700.00 and expenses when he discovered the defect in the title. The plaintiff would be entitled to recover as damages only the actual loss he sustained as a result of a breach of the contract. 9 Appleman, Insurance Law and Practice, § 5217 (1943). If he disbursed the $1700.00 simultaneously with the execution of, and obligated himself to pay expenses in, a purchase agreement before he applied to the defendant for and was issued the contract to insure for the alleged breach of which he sues, or was reimbursed by the seller after the title defect was discovered, the plaintiff has sustained no damage in reliance on the defendant's contract or because of any breach thereof, hence has no cause of action against the defendant. For this reason the proposed amended complaint is defective * * *."
[4] The use of the word "binder" in insurance parlance implies a temporary insurance pending issuance of a permanent policy. See 29 Am.Jur. 595-596, Insurance Sec. 205; 44 C.J.S. Insurance § 230, p. 956 (Preliminary or Temporary Contracts of Insurance).
[5] In Hanover Fire Ins. Co. v. Hiers, 79 Fla. 408, 84 So. 605, 608, the Supreme Court of Florida held: "That an insurance company can by a preliminary parol contract bind itself to issue or to renew a policy in the future seems too well settled to admit of doubt."
[6] See Bassett v. Federal Land Bank of Columbia, 98 Fla. 266, 123 So. 732.
[7] See Foehrenbach v. German-American Title & Trust Company, 217 Pa. 331, 66 A. 561, 12 L.R.A.,N.S., 465, 118 Am. St.Rep. 916, in which the first syllabus is as follows:

"One already in possession claiming to be the Owner when a policy of title insurance issues to him may recover thereon though he expends nothing and hence suffers no loss in reliance on the policy."
[8] No special damages such as loss of profit on a resale are alleged.
[9] It will be noted that the binder does not require plaintiff to inform defendant of defects of title discovered after the issuance of the binder and not theretofore suspected.
[10] The agreement was to insure against all unscheduled defects and the defect was not scheduled.