## Poole v. Commonwealth Land Title Insurance Company

*Norman Snyder*, for plaintiffs.
*Guy G. deFuria*, for defendant.

LIPPINCOTT, J., February 10, 1967.—This is an action in assumpsit instituted by property owners to recover the face amount ($3,500) of a title insurance policy issued by one of defendant's predecessor companies. A motion for summary judgment has been filed under rule 1035 of the Pennsylvania Rules of Civil Procedure.

On September 2, 1943, plaintiffs entered into a written agreement to purchase for $3,500 " . . . premises consisting of approximately one-half acre of land, two-story stone dwelling, . . . and other buildings and improvements. . . ." Settlement was held at the title company's office on September 16, 1943, at which time a deed was delivered using a legal description supplied by the title company. This description erroneously covered not only the property intended to be purchased by plaintiffs, but also an adjoining, improved property not owned by the seller. At settlement, defendant issued a "marked-up" settlement certificate also incorrectly including in the single description the two separate parcels. This certificate further provided that ". . . this Company will not assume any responsibility for any deficiency in size or quantity of land", and specifically excluded from liability "Accuracy of description and other objections, easements or encumbrances, which are visible on the ground or known to the insured".

Plaintiffs had lived in the property which they bought as tenants for several years before making settlement and were thus familiar with what they intended to purchase. Ownership of the adjacent property, prior to 1943 and to the present, is by persons having no relationship whatsoever with plaintiffs' grantor. While plaintiffs agreed to and did purchase a "stone dwelling", the adjacent property is improved by a frame house. The two properties are also physically separated by a fence, which existed prior to settlement and to the present time.

At no time did plaintiffs occupy any of the adjoining parcel beyond the fence dividing the two; nor did they ever make any claim of ownership to said property. Plaintiffs, in fact, testified in deposition that they assumed that the fence was the property line. Each property is separately assessed for taxation purposes, and plaintiffs do not contend that they have suffered any loss by virtue of the description error. They also do not aver that the title to the land which they intended to and did purchase is not good and marketable. The actual area of the land intended to be acquired by the plaintiffs (stated in the agreement of sale as "approximately one-half acre") is .56 acres, while the area of the adjacent property erroneously included in the description is an additional .323 acres.

While plaintiffs thus do not allege that they have suffered any loss, it is their contention that, because of the erroneous inclusion in the description of the adjacent parcel as well as the one they agreed to buy, the title company is liable to them for the full face amount of the insurance policy ($3,500), which is the price they paid for the property they actually received (it being conceded that the additional property is worth in excess of this amount).

The law is clear that a title insurance policy is a contract of indemnity, and plaintiffs are bound to

show actual loss sustained before there can be a recovery: Pennsylvania Company for Insurances on Lives and Granting Annuities v. Central Trust and Savings Company, 255 Pa. 322. See also Sattler v. Philadelphia Title Insurance Company, 192 Pa. Superior Ct. 337, where the court stated, page 342:

"The correct rule, as laid down by our Supreme Court, is that a contract of title insurance is an agreement to indemnify against loss through defects of title: Foehrenbach v. Title & Trust Co., 217 Pa. 331, 66 A. 561. See also Pennsylvania Laundry Co. v. Land Title & Trust Co., 74 Pa. Superior Ct. 329. In the Foehrenbach case it was pointed out that the purpose of title insurance is to 'indemnify those who actually suffer the loss'. In the case at bar, it was incumbent upon appellant to establish a loss covered by the provisions of the contract: Fox Chase Bank v. Wayne Junction Trust Co., 258 Pa. 272, 101 A. 979. This simply means that the insured must show a loss resulting from the unexcepted encumbrances. In other words, a title insurance policy is a contract of indemnity and not of guaranty. Unless and until a loss occurs, there is no liability. See Narberth Building & Loan v. Bryn Mawr Trust Co., 126 Pa. Superior Ct. 74, 190 A. 149".

While an actual owner's *insurance* policy (as distinguished from the policy issued to the mortgagee) has not been issued in this case,* both parties agree that the issue should be decided as an insurance problem, plaintiffs' brief stating: "The action is strictly one for insurance". Although defendant pleads that the owner's policy, if issued, would provide ". . . that the liability of the Defendant under such policy does in no case exceed the actual loss of the Plaintiffs . . .",

---

* Defendant contends that the mortgage policy must first be returned for cancellation, while plaintiffs deny that they have an obligation to secure such return.

we regard this as being no more than a restatement of the law as cited in the aforesaid cases.

Parenthetically, while we express no opinion as to whether or not an owner's policy should be issued by defendant after it has been advised that the mortgage has been satisfied, and further doubt the power of the court to direct such issuance in an action in assumpsit, we agree with defendant's statement that a "just conclusion of this controversy, in fairness to both parties" would be for defendant to issue such a policy—in this instance, by voluntary action on its part.

Plaintiffs strongly rely on the case of Foehrenbach v. German-American Title & Trust Company, 217 Pa. 331 (1907). However, that case is clearly distinguishable from the case at bar on its facts. In the Foehrenbach case, plaintiff, in full and complete possession of the subject premises and believing that he was the sole owner thereof, applied for title insurance. The title company issued a policy insuring his interest as sole owner. In fact, however, plaintiff only had a one half interest in said property by virtue of the laws of inheritance under which he had claimed full ownership. The court held that (page 336): ". . . we must examine the contract in the light of the purpose or object for which it was made". Since plaintiff was in full possession and wished ". . . to safeguard himself in the enjoyment of his title" (page 336), the title company was held liable for its improper opinion. Although we believe the reasoning of the Supreme Court to be strained in reaching its desired result, the court found that plaintiff suffered a loss in fact. The opinion states page 336: "Loss is a relative term. Failure to keep that which one has, is loss".

In the case at bar, however, plaintiffs were never in possession of the adjacent property and have suffered no loss of any kind. Their purpose or object in contracting with the title company was to get insur-

ance covering the exact land and dwelling they received, and they do not contend that the title to their property, which they have occupied for 23 years, is defective. They further admit that they have no interest in the adjacent property and do not claim title to it. The law is clear that plaintiffs must have an interest in real estate in order to claim indemnification from an insurer against loss through defects of title: See 1 Golden, Law of Insurance in Pennsylvania 411.

Furthermore, by the very terms of the settlement certificate, which is the contractual basis for this suit, defendant specifically excepts "accuracy of description and any other objections, easements, or encumbrances which are visible on the ground or known to the insured". The fence was admittedly in being and known to plaintiffs as the boundary line. The contract also provides that no liability is assumed for "any deficiency in size or quantity of land". Plaintiffs actually own precisely what they agreed to buy—namely, "approximately one half acre of land".

It is obvious that plaintiffs are seeking a windfall as a result of the mistake of the title company discovered 22 years later. Such a result would be unconscionable. Under such circumstances, the court will reform the contract to correct the obvious error in description by applying the law of mistake: See Restatement, Contracts, §§500-04, §507 and §508.

We, therefore, enter the following:

### ORDER

And now, February 10, 1967, upon consideration of briefs and argument before a court en banc, it is ordered and decreed that: (1.) Judgment is entered in favor of defendant; (2.) Each side shall pay their or its own costs; (3.) Plaintiffs are granted an exception.